IN THE COURT OF APPEALS OF TENNESSEE

AT JACKSON

_____

FILED

December 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

DIANNE DOBSON AND HER
HUSBAND, MIKE DOBSON,

    Claimants-Appellants,

Vs.

STATE OF TENNESSEE

    Defendant-Appellee

Claims Commission No. 96001673
C.A. No. W1999-02014-COA-R3-CV

_____

FROM THE TENNESSEE CLAIMS COMMISSION
THE HONORABLE W.R. BAKER, COMMISSIONER

Gayden Drew IV of Jackson
For Appellants

Beauchamp E. Brogan, General Counsel and Secretary
Lisa Karen Atkins, Assistant General Counsel

*AFFIRMED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

CONCUR:

DAVID R. FARMER, JUDGE

HOLLY KIRBY LILLARD, JUDGE

This is a premises liability case arising from a fall by plaintiff on the University of Tennessee at Martin (referred to herein as UTM) campus. Plaintiffs, Dianne Dobson, and her husband Mike Dobson, appeal from the judgement of the Claims Commission denying the relief sought against defendant, State of Tennessee (referred to herein as State) and dismissing their claim.

On September 30, 1996, Ms. Dobson and her husband filed a complaint against the State with the Claims Commission. The complaint alleges that as a result of her fall on the UTM campus Ms. Dobson sustained serious and permanently disabling injuries and that the fall was proximately caused by the dangerous condition of the premise, which is State controlled real property. Specifically, the complaint alleges that Ms. Dobson was walking in a safe manner across the lawn of the Health Center on her way to enter the building and suddenly and without warning, tripped and fell on a metal landscape border that had been installed abutting the sidewalk entering the building.

At trial before the Claims Commission Ms. Dobson testified that on May 2, 1996 she was injured when she fell outside the south entrance of the Student Health Center building on the UTM campus. At the time of her fall she was on the campus to deliver a golf shirt to Dr. Shore, one of three doctors that her employer, Health South Cain Creek, was sponsoring in a golf tournament scheduled for that afternoon. According to the record Health South Cain Creek, a physical rehabilitation facility, sponsored doctors in this golf tournament by paying their fees and giving them golf shirts to wear as part of a public relations effort for the facility. Ms. Dobson testified that she learned that she was to deliver the shirts that same morning, when she received a telephone call at work from Necie Barroni, the head of the facility, who requested that Ms. Dobson personally deliver the shirts to Drs. Lyerly, Jones, and Shore. Ms. Dobson testified that Ms. Barroni was attending a retreat in Union City at the time that she telephoned her and requested that she make the three hand deliveries.

Ms. Dobson testified that after receiving the telephone request, she went to another building in the facility where Ms. Barroni's office was located and retrieved the three shirts. She then got into her van and left Cain Creek at approximately 9:15 a. m. to make the hand deliveries, starting at Dr. Lyerly's office. The record contains contradictions in the testimony of Ms. Dobson's deposition testimony and her trial testimony as to where she proceeded from that point. In her deposition Ms. Dobson testified that she then proceeded to Dr. Jones's office, located at the Specialty Clinic, to deliver Dr. Jones's shirt personally and spoke with both Dr. Jones and his receptionist, and then proceeded to deliver Dr. Shore's shirt. However at trial Ms. Dobson testified that she left Dr. Jones's shirt with Dr. Lyerly and then proceeded to the Martin Medical Center, where she believed Dr. Shore to be working. At trial Ms. Dobson explained the discrepancy in the two statements stating that she was confused at her deposition.

Ms Dobson testified that at the Martin Medical Center, she was informed by the receptionist that Dr. Shore was working at the UTM Health Center on that morning. Ms. Dobson stated that she asked front desk workers at the Martin Medical Center for directions to the Health Center and was told that the building was a white house.[1] Ms. Dobson then proceeded to the UTM campus to deliver Dr. Shore's shirt.

Ms. Dobson testified that she had never been to the area of the UTM campus where the Health Center is located. As she was driving on the campus trying to locate the Health Center she spotted Dr. Shore going up stairs to a building and realized that this is where she needed to go. Ms. Dobson then parked her van in a yellow zone on the street adjacent to the Health Center. Ms. Dobson testified that she did not see the front door to the Health Center, nor was she aware that she had parked in a yellow zone. She then proceeded across the lawn toward the south entrance of the Health Center, where she recently saw Dr. Shore enter. Ms. Dobson was wearing sunglasses at the time, but testified that, if anything, they helped her

---

[1] The record reveals that the UTM Health Center is a building of red brick and white siding.

visibility, as it was a sunny day. As she stepped from the grass to the sidewalk leading to the south entrance she tripped and fell on her right knee, left elbow, and face. Ms. Dobson testified that a young woman, who apparently had been walking down the street, immediately approached her and asked if she was hurt. Ms. Dobson responded affirmatively, and the young woman went to the south entrance of the Health Center to get help.

The record reveals that Dr. Shore and LPNs Barbara Moore and Nancy Hastings were working at the Health Center at the time of Ms. Dobson's fall. Barbara Moore testified that she and Nancy Hastings both initially responded to the young woman's call for help. According to Ms. Moore, Ms. Hastings then went to retrieve Dr. Shore and she remained with Ms. Dobson. The record reveals that an ambulance was summoned and Ms. Dobson was taken to Volunteer General Hospital in Martin, then to the Med in Memphis on the following day, and then to Germantown Methodist Hospital. The record further reveals that Ms. Dobson's right leg had been broken in eight places and her left arm had been broken in fourteen places.

The State put on proof that the metal sidewalk border was installed approximately one year prior to Ms. Dobson's fall as a safety precaution to prevent a slip and fall hazard to employees using the south entrance at the rear of the Student Health Center. The record reveals that the hazard had been caused by mud pooling on the sidewalk in front of the entrance in rainy weather. The mud pooling was caused by the east area of the property being lower than the west area, which resulted in a water flow that washed mud across the sidewalk. The border was installed adjacent to the sidewalk, but not extending over or on to the sidewalk, to serve as a barrier between the sidewalk and the mud that washed downhill. The border was two inches high and five feet long.        Wanda Hall, a University of Tennessee safety officer, testified that there is a designated parking area outside the clinic for visitors to the clinic. The record reveals that this parking area is identified by a sign reading "Student Health Parking Only" and has parking capacity for eight cars, but that only three cars were parked there on the day of the accident.

4

Visitors are allowed to park in any lot on the campus, even those that are marked restricted, and publications regarding visitor parking are available at the campus traffic office.

The cause was heard by a commissioner sitting by designation. At the conclusion of proof the commissioner ruled from the bench that the condition of the university premises on which Ms. Dobson fell was not dangerous, and there was no need to compare relative negligence because over one-half of the negligence was attributed to Ms. Dobson and not to the State.

With regard to his decision that the State did not create a dangerous condition the commissioner stated:

[d]angerous conditions don't exist in the abstract; they exist relative to circumstances. And I think here particularly in relation to use. A condition that is dangerous for ingress and egress might not be dangerous for a \ lawn. It's in that connection that I say relative – at least relatively speaking, the condition that we're talking about here was not dangerous because even if it were considered dangerous for a passageway it was not dangerous for a lawn. Of course, whatever condition was there, there's no doubt that what ever condition was there the university created. **The question is whether the condition was dangerous. It was dangerous only for somebody who was using the lawn for a sidewalk whereas if they had used a sidewalk for a sidewalk it would not have been dangerous.** (Emphasis added).

As to comparative negligence the commissioner ruled that Ms. Dobson was more at fault than the State stating: "I have to think predominantly about this claimant putting herself in a position that she didn't need to put herself into, that she could have spared herself by such common things as parking in the area where there were three or four spaces for her to park, going in the main entrance, walking on [the] sidewalk..." The commissioner stated that he sympathized with the claimant's state of mind having been given bad directions and being frustrated stating: " I personally am inclined to not pay any attention to whether I'm parking in a parking zone or in a no-parking zone. I personally am inclined to walk across the

5

grass instead of following a sidewalk..." However the commission ruled that the State was not responsible.    An order was entered denying the claim.  It is from this order that the Dobsons appeal.

The Dobsons present the following four issues on appeal:

I.      Did the evidence preponderate against the Claims Commissioner's holding that there did not exist a dangerous condition on state controlled real property?

II.     Did the evidence preponderate against the Clams Commissioner's holding that Dianne Dobson's accident was caused by negligence of which at least fifty percent (50%) was attributed to her?

III.    If the answer to the previous two issues is in the affirmative, what percentage of comparative negligence, if any, should have been attributed to Dianne Dobson?

IV.    If the answer to the first two issues is in the affirmative, what compensatory damages should have been awarded to the claimants after the reduction of Dianne Dobson's comparative negligence, if any?

We conclude that appellants' four issues presented for review may be restated  as whether the evidence in this case preponderates against the commissioner's ruling that there was no dangerous condition created by State employees, and whether the evidence preponderates against his conclusion that there was "no need to compare relative negligence here because beyond any doubt over half of the negligence here is attributable to the plaintiff and not to the State."

This is a direct appeal from the Tennessee Claims Commission and is governed by the Tennessee Rules of Appellate Procedure.  T.C.A.  § 9-8-403(a)(1) 1999.  Since this is a nonjury case, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the commission.  Unless evidence preponderates against the findings we must affirm, absent error of law. *Sanders v. State*, 783 S.W. 2d 948 (Tenn. Ct. App. 1989); T.R.A.P. 13(d).

Ms. Dobson asserts that her accident was solely and proximately caused by the negligence of university officials in putting down the metal landscape border and in failing to ensure that the border was completely visible to persons walking across the grass.  She asserts that the grass around the border should have been trimmed

with a weed eater on a regular basis or the border painted a bright color to alert pedestrians to its location. Ms. Dobson argues that another option for the university was to post warning signs. Ms. Dobson further asserts that the State employees could have abated the problem of the mud washing over the sidewalk by placing sod in the area to prevent water flow from carrying mud on to the sidewalk. Ms. Dobson contends that sod would have been a safe and effective solution to the hazard caused by the washing of mud, as opposed to the border which Ms. Dobson asserts was not a safe solution. Ms. Dobson argues that it is somewhat ludicrous to suggest that it was not foreseeable for someone to walk across the grass where she fell and that the metal sidewalk border amounted to a hidden and dangerous trap, which she could not avoid although she exercised due care for her own safety. Ms. Dobson contends that the evidence preponderates against the commissioner's ruling that the metal sidewalk border did not constitute a dangerous condition and that Ms. Dobson's fall was caused by negligence which was at least fifty percent 50% attributable to her. In addition Ms. Dobson claims to be responsible for very little comparative fault, if any.

In response to Ms. Dobson's contention that putting down sod would have been a safer alternative, the State asserts that grass growing in the area (regardless of the amount) was inadequate to stop water from running down hill and carrying mud onto the sidewalk. The State contends that the installation of the border was in accordance with the university's legal obligation to furnish a workplace free of recognized hazards that are likely to harm or injure employees. The mud on the sidewalk constituted a recognized danger, and the installation of the border was an appropriate abatement of the hazard. The State asserts that the border presented no hazard to anyone using the side walk in its ordinary and customary fashion, and that the border would be visible to anyone walking on the sidewalk.

The State asserts that the commissioner's finding that Ms. Dobson was more at fault for her injury than the State was not in error. The State contends that Ms. Dobson was in a hurry to catch Dr. Shore and consequently failed to take adequate measures to insure her own safety. She illegally parked along the curb that was

7

painted yellow, and that had she parked in a designated parking area there would have been no need for her to cut across the grass to reach either entrance to the building, but instead she could have reached the building by one of the sidewalks that lead to the Health Center building.

The State further asserts that because of Ms. Dobson's haste in trying to catch Dr. Shore, she did not see the main entrance and cut across the grass, past the most accessible entrance, on a path that was not designated or worn to indicate that the route she took was used by others.

The jurisdiction of the Tennessee Claims Commission was invoked pursuant to T. C. A. § 9-8-307(a)(1)(C) which states:

> 9-8-307. Jurisdiction – Claims –Waiver of action –Standard for tort liability – Damages – Immunities – Definitions – Transfer of claims. – (a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories:
>
> *    *    *    *    *    *
>
> (C) Negligently created or maintained dangerous conditions on state controlled real property. The claimant under this subsection must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;

T. C. A. § 9-8-307(a)(1)(C) (Supp.1998).

T.C.A. § 9-8-307(a)(1)(C) limits recovery to claimants who meet the requirements enumerated in the statue. "The purpose of this statue is to ensure that the State will not be held liable unless the circumstances are such that a private individual in the State's place would also be liable." *Byrd v. State*, 905 S.W.2d 195 (Tenn. Ct. App. 1995) (citing T.C.A. § 9-8-307(d); *Sanders v. State*, 783 S.W. 2d 948, 951 (Tenn. Ct. App. 1989)). The plaintiff has the burden of proof to establish that the State negligently created or maintained a dangerous condition, that the risk presented by the dangerous condition was foreseeable, and that notice had been giving to the proper official prior to the injury in time sufficient to take remedial action. *Hames v. State,* 808 S.W. 2d 41, 44 (Tenn. 1991). In *Hames* the Court further states:

8

> For the purposes of determining liability under the statue, the State is to be treated as a private individual. T.C.A. § 9-8-307 (a)(3), (d). Thus, for the purposes of deciding the States' liability after removal of immunity, the statue codifies the common law obligation of owners and occupiers of land. **Sanders v. State**, 783 S.W. 2d 948, 951 (Tenn. App. 1989). We note that any discussion of 'negligently created or maintained conditions,' 'reasonable care,' and 'foreseeability of risk' inescapably involves traditional principles of negligence law generally, these being: (1) a duty of care owed by the Defendant to the Plaintiff; (2) conduct failing below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause.

*Id.* (Citing **McCleanahan v. Cooley**, 806 S.W. 2d 767 (Tenn. 1991).

Duty, the first element of the claim, is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. **McCall v. Wilder**, 913 S.W.2d 150, 153 (Tenn. 1995). In order to prevail in a negligence suit, a plaintiff must prove that the defendant owed the plaintiff a duty of care; that defendants conduct fell below the standard of care amounting to a breach of that duty; injury; cause; and proximate cause. **Byrd**, 905 S.W.2d 196.

The existence and scope of the duty of the defendant in a particular case rests on all the relevant circumstances, including the foreseeability of harm to the plaintiff and other similarly situated persons. **Pittman v. Upjohn Co.**, 890 S.W.2d 425, 433 (Tenn. 1994).

In cases involving premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. **Eaton v. McLain**, 891 S.W.2d 587, 593-94 (Tenn. 1994). This duty is based upon the assumption that the owner has superior knowledge of any perilous condition that may exist on the property. **Kendall Oil Co. v. Payne**, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (1955). The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition and to remove or warn against latent or hidden dangerous conditions on the premises of which the owner is aware or should be aware through the exercise of reasonable diligence. **Eaton**, 891 S.W.2d at 593-94. The duty of a premises owner is "a duty of

9

reasonable care under all circumstances." ***Jones v. Exxon Corp.***, 940 S.W.2d 69, 71 (Tenn. Ct. App. 1996). The scope of this duty is grounded upon the foreseeability of the risk involved. ***Id.*** at 72. Thus, in order to prevail in a premises liability action, the plaintiff must show that the injury was a reasonably foreseeable probability and that some action within the defendant's power more probably than not would have prevented the injury. ***Doe v. Linder Constr. Co.***, 845 S.W.2d 173, 178 (Tenn. 1992).

Traditionally, liability was not imposed on a premises owners by courts of this state for injuries that resulted from defective or dangerous conditions that were "open and obvious." ***See McCormick v. Waters***, 594 S.W.2d 385 (Tenn. 1980); ***Kendall Oil Co. v. Payne***, 41 Tenn. App. 201, 293 S.W.2d 40 (1955). In cases after the decision of the Tennessee Supreme Court in ***McIntyre v. Balentine***, 833 S.W. 2d 52 (Tenn. 1992) liability in premises liability actions has been determined according to the principles of comparative fault:

> [w]hen an invitee is injured because of dangers that are obvious, reasonably apparent, or as well known to the injured party as to the owner or operator of the premises, liability, if any should be determined in accordance with the principles of comparative fault analysis and the general negligence law of this state.

***Jones***, 940 S.W. 2d at 72 (quoting ***Cooperwood v. Kroger Food Stores, Inc.***, No. 02A01-9308-CV-00182, 1984 WL 725217 (Tenn. Ct. App. W.S. Dec. 30,1994)). The Supreme Court of Tennessee recently provided further guidance for determining liability in ***Coln v. City of Savannah***, 966 S.W.2d 34 (Tenn. 1998). The ***Coln*** Court held:

> the duty issue must be analyzed with regard to **foreseeability** and **gravity of harm**, and the **feasibility and availability of alternative conduct** that would have prevented the harm.

***Id.*** at 43. (Emphasis added).

The commissioner found that Ms. Dobson was not using the path in its ordinary use and that the path was not dangerous in terms of common experience as there had been no previous injury there. The evidence does not preponderate against the commissioner's finding that the state did not create a dangerous

10

condition when it installed the border to prevent mud from washing across the sidewalk and the consequential slip hazard. In applying the *Coln* Court's analysis to the instant case we do not think that the State breached its duty to Ms. Dobson as the gravity of harm which befell her was not foreseeable. Ms. Dobson was not using the sidewalk in its customary manner. The State could not foresee that Ms. Dobson would park in a no parking zone and proceed across the lawn in a hurried manner with little regard for her own safety to enter the south entrance when the main entrance was the closest entrance to where she parked. Upon review of the record the main entrance appears to us to be the most obvious selection between the two entrances to the Health Center. Ms. Dobson has suggested alternative procedures that she asserts would have both prevented the mud, slip hazard present in front of the south entrance and that would have been safer. However, we do not believe that the evidence preponderated against the commissioner's finding that there was successful rebuttal to Ms. Dobson's argument that the placement of sod in the area was a safer alternative, or to the finding that there was successful rebuttal to Ms. Dobson's contention that the State failed to properly maintain the grass so that the border was not visible to Ms. Dobson. No acceptable alternative presented by Ms. Dobson was proved to be a feasible alternative to the border in preventing the mud hazard.

Ms. Dobson has not shown that her fall was foreseeable and she has not proved the feasability of alternative conduct. It is therefore our opinion that evidence does not preponderate against the commissioner's finding that the border was not a dangerous condition created by the State,

The Commissioner concluded that the proximate cause of Ms. Dobson's injury was a failure on her part to exercise ordinary care for her own safety demonstrated by her using the lawn for a sidewalk, parking in a no-parking zone, and "cutting corners in order to catch (Dr. Shore) before he got into his ordinary routine." Although we have sympathy for Ms. Dobson, we cannot escape the fact that in this case she should be charged with the responsibility of exercising reasonable and ordinary care for her own safety. "The State is not the insurer of those who enter

11

upon its facilities." **Byrd**, 905 S.W.2d at 197 (citing **Atkins v. City Finance Co.,** 683 S.W. 2d 331, 332 (Tenn. Ct. App. 1984); **Paradiso v. Kroger Co.,** 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973)). The commissioner concluded that the proximate cause of Ms. Dobson's injury was her own failure to ensure her own safety. The evidence does not preponderate against the commissioner's finding that the State is not responsible for Ms. Dobson's injury. Accordingly, the judgment of the Commissioner is affirmed, and costs of the appeal are assessed against the appellants, Diane Dobson and Mike Dobson.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE,W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

12