IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 15, 2001 Session

CONSTANCE CHERRY AND MARCUS CHERRY, AS NEXT OF KIN OF
STEVEN CHERRY, DECEASED
v.
STATE OF TENNESSEE

An Appeal from the Tennessee Claims Commission, Western Division
Claim No. 98001883     Randy C. Camp, Commissioner

No. W2001-00038-COA-R3-CV - Filed July 23, 2002

This is a wrongful death case. The decedent was a patient at a state mental health institution. He died at the institution because he was not properly treated for urinary problems. The mother of the decedent filed this wrongful death action against the State, seeking damages for the decedent's loss of earning capacity, pain and suffering, as well as her loss of consortium. The complaint was later amended to add the decedent's son as a plaintiff. The son sought damages only for his loss of consortium. After a hearing, the Tennessee Claims Commission denied the mother any damages for wrongful death, holding that persons of unequal kinship cannot both maintain a wrongful death action relating to the same death. However, the Claims Commission awarded the mother her out-of-pocket funeral expenses, and awarded $25,000 to the son for his loss of consortium. The mother and son now appeal. We affirm, finding that, as between the mother and son of the decedent, the son has the greater degree of kinship with the decedent, and therefore the mother cannot be awarded damages for the decedent's wrongful death.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee
Claims Commission is Affirmed

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Ricky L. Boren, Jackson, Tennessee, for the appellants, Constance Cherry and Marcus Cherry, as next of kin of Steven Cherry, deceased.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Martha A. Campbell, Senior Counsel, for the appellee, State of Tennessee.

**OPINION**

This is a tragic case with unfortunate procedural complications. Steven Cherry ("decedent") was a patient at the Western Mental Health Institute ("the Institute") in Bolivar, Tennessee, beginning in 1995 until his death on July 30, 1997, at 32 years of age. Prior to his death, he received $1,000 per month in social security disability benefits.

On July 25, 1997, the decedent visited his mother, Constance Cherry ("Constance"). On July 27, 1997, she returned him to the Institute and asked that he be checked for urinary problems. He was never examined. On July 30, 1997, he was transported to the Bolivar Memorial Hospital, where he died of diabetic ketoacidosis.

On August 31, 1998, Constance filed a complaint against the State of Tennessee with the Tennessee Claims Commission ("Commission") seeking damages for burial expenses, pain and suffering of Steven Cherry, the pecuniary value of Steven Cherry's life, and "all other damages allowed under Tennessee law." On February 11, 1999, the complaint was amended to seek loss of consortium damages on behalf of Marcus Cherry ("Marcus"), the three-year-old son of the decedent. No other damages were sought on behalf of the decedent's son. The State stipulated to liability. On May 23, 2000, the case was tried before the Commission on the issue of damages only.

At trial, the Commission heard evidence from two expert witnesses, both economists, who testified regarding the pecuniary value of the decedent's life. Dr. Parker Cashdollar ("Dr. Cashdollar"),[1] testified on behalf of the claimants. Based on the decedent's lost earning capacity, he asserted that the pecuniary value of the decedent's life was $337,623. Dr. Cashdollar arrived at that figure by assuming that Steven Cherry would have returned to the work force approximately one year after the time of his death, and that he would have been employed in a position comparable to the job he held from 1984 to 1994. Dr. Cashdollar further assumed that Steven Cherry would have earned approximately $18,600 per year, and that he would have continued to work for approximately 23 more years until he was about 57 years old.

In contrast, the State's expert witness, Dr. Mark Cohen ("Dr. Cohen"),[2] maintained that the pecuniary value of Steven Cherry's life could not be determined because there was no reasonable basis on which to assume that Steven Cherry would ever have been able to return to the work force. From his review of Dr. Cashdollar's report, Dr. Cohen asserted that Dr. Cashdollar's assumptions regarding Steven Cherry's lost earnings were theoretical and were not based on facts. Dr. Cohen reviewed the medical reports of the physicians at the Institute and "found nothing in the record indicating [the decedent] was planning to get out in a year or that there was even a reasonable

---

[1]Dr. Cashdollar earned a Masters degree and a Ph.D. in agricultural economics in 1971 from the University of Tennessee at Knoxville.

[2]Dr. Cohen earned a Masters degree and a Ph.D. in economics in 1985 from Carnegie-Melon University in Pittsburgh, Pennsylvania.

prognosis of that." Dr. Cohen also opined that it was unreasonable for Dr. Cashdollar to assume that, immediately after his release, Steven Cherry would have been employed in a job similar to the job he held prior to becoming a patient at the Institute, because Steven Cherry had been incarcerated prior to his commitment in the Institute, and he was fired from his job for poor performance.

The Claims Commission also heard evidence regarding Marcus's relationship with his father in order to determine the value of Marcus's loss of parental consortium. The evidence showed that Steven Cherry occasionally visited Marcus, but that the two never lived together. Generally, it is undisputed that Marcus and his father had a limited relationship, consisting only of periodic visits.

On November 22, 2000, the Commission entered an order awarding Constance $8,522 in funeral expenses, which was undisputed, and awarding Marcus $25,000 for his loss of consortium. The Commission denied wrongful death damages to Constance, explaining that it could not award her such damages because two persons of unequal kinship cannot maintain a wrongful death action for the same death. The degree of Marcus's kinship to the decedent was considered superior to that of Constance; consequently, the Commission dismissed Constance's remaining claims. Other wrongful death damages were not awarded to Marcus, because in the amended complaint, Marcus sought damages only for his loss of consortium.

The Commission also explained the reasoning behind its $25,000 award to Marcus for loss of consortium. The Commission stated that, after reviewing "hundreds of pages of medical records," it concluded that Dr. Cohen was correct in asserting that "[t]here is no evidence to indicate [the decedent] could or would be able to function on his own at any particular time in the future." However, the Commission recognized that, although Marcus's relationship with the decedent was limited, Marcus had suffered the loss of the parent-child relationship. Therefore, the Commission found the pecuniary value of Marcus's loss of consortium to be $25,000. December 19, 2000, the Commission entered a supplemental order, finding no evidence in the medical records, such as statements by the decedent to medical personnel, indicating that the decedent suffered pain prior to his death. Constance and Marcus now appeal both of the Commission's orders.

Constance and Marcus assert on appeal that the Commission erred in holding that the pecuniary value of the decedent's life could not be determined, and that the Commission also erred in declining to award damages for the decedent's pain and suffering. In addition, they argue that the Commission erred, as a matter of law, in determining that Constance was not entitled to damages under Tennessee Code Annotated § 20-5-107 because her degree of kinship to the decedent was inferior to that of Marcus.

We review this direct appeal from the Claims Commission de novo with a presumption of the correctness of the Commission's factual findings. **Dobson v. State,** 23 S.W.3d 324, 328-29 (Tenn. Ct. App. 1999); **Tenn. R. App. P.** 13(d). We afford no such presumption to the Commission's legal conclusions; they are reviewed de novo. **Ki v. State**, No. W2000-02364-COA-R3-CV, 2001 Tenn. App. LEXIS 611, at *12 (Tenn. Ct. App. Aug. 13, 2001).

We first address Constance's argument that the Commission erred in determining that she was not entitled to wrongful death damages because her kinship with the decedent was inferior to that of Marcus. In reaching its conclusion, the Commission relied on *Swanson ex rel Hatcher v. Peterson*, No. M1999-00241-COA-R3-CV, 2000 Tenn. App. LEXIS 20 (Tenn. Ct. App. Jan. 21, 2000). In *Swanson*, both the decedent's widow and the decedent's daughter from a former marriage filed separate suits against the same defendants seeking recovery for the wrongful death of the decedent. *Swanson*, 2000 Tenn. App. LEXIS 20, at *3-*4. Faced with two lawsuits, the defendants moved to dismiss the daughter's action, claiming that the widow's right to maintain an action for wrongful death was superior to that of the daughter. *Id.* at *4. The trial court agreed and dismissed the daughter's action. This Court affirmed, reasoning that "[n]o matter how many suits parties may file to address an allegedly wrongful death, [the Tennessee wrongful death statutes] contemplate only one cause of action. . . . Accordingly, multiple actions for a single wrongful death cannot be maintained." *Id.* at *6-*7. A wrongful death lawsuit may be valid when filed, but if it becomes invalid because a person with superior kinship also files a wrongful death suit, "it is the court's duty to dismiss it." *Id.* at *7-*8. In other words, if two wrongful death lawsuits are filed by persons of unequal kinship, the court must dismiss the suit brought by the party with the inferior degree of kinship. *Id.* at *7.

The conclusion in *Swanson* compels a similar result in this case. The original complaint filed by Constance stated a valid claim for wrongful death when it was filed.[3] However, when son Marcus was added as a plaintiff, Constance's claim for damages for wrongful death became invalid because Marcus has the greater degree of kinship with the decedent. Tennessee Code Annotated § 20-5-107 provides that a wrongful death suit can be brought by the personal representative of the estate, the spouse of the deceased, "or, if there is no surviving spouse, by the children of the deceased or by the next of kin." Thus, the statute lists children first and mentions them specifically, whereas a parent falls under the general "next of kin" category. Under these circumstances, a wrongful death action by a child "trumps" an action by a parent. *See id.* (determining that a "spouse's action trumps the others"). Therefore, under the rule in *Swanson*, as between Constance and Marcus, only Marcus can maintain a wrongful death claim for the death of his father, and the Commission correctly dismissed Constance's wrongful death claims. *See also Matthews v. Mitchell*, 705 S.W.2d 657, 660 (Tenn. Ct. App. 1985) (stating that "there can be but one cause of action for the wrongful death of another").

Constance argues that the rule in *Swanson* should not apply because *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593 (Tenn. 1999), had not been decided at that time. In *Jordan*,[4] the

---

[3] It is now clear in Tennessee that a parent can recover for the loss of consortium of a child. *See Hancock v. Chattanooga-Hamilton County Hosp. Auth.*, 54 S.W.3d 234, 236 (Tenn. 2001).

[4] In an action for wrongful death, a plaintiff may seek damages for the "mental and physical suffering, loss of time, and necessary expense resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received."

(continued...)

Tennessee Supreme Court for the first time held that loss of consortium damages are recoverable in a wrongful death action as an element of the decedent's pecuniary value. *See Jordan*, 984 S.W.2d at 600-02. Since oral argument in this case, however, the Supreme Court decided *Kline v. Eyrich*, 69 S.W.3d 197 (Tenn. 2002). In *Kline*, the Court confirmed that, as between parties with unequal degrees of kinship with the decedent, a wrongful death action can only be brought by the party with the superior kinship, and that the right of action is "single, entire[,] and indivisible." *Kline*, 69 S.W.3d at 207. The *Kline* Court held that the children of the decedent could not intervene in the surviving spouse's action to protect their loss of consortium rights, because "a claim for consortium merely embodies one component of the decedent's pecuniary value of life." *Id.* at 208. Therefore, only the party with the superior degree of kinship can recover damages for loss of consortium, and *Swanson* cannot be distinguished in the manner argued by Constance.

The amended complaint, adding Marcus as a plaintiff, seeks only loss of consortium damages on his behalf. Indeed, Marcus was awarded $25,000 for his loss of consortium. As between Constance and Marcus, Marcus was the only party entitled to seek wrongful death damages, such as damages for the decedent's pain and suffering, but such damages were not sought on his behalf. Consequently, the Commission did not err in declining to award damages for the decedent's pain and suffering. This holding pretermits any other issues raised on appeal.

The decision of the Claims Commission is affirmed. Costs are to be taxed to the appellants, Constance Cherry and Marcus Cherry, and their surety, for which execution may issue, if necessary.



HOLLY KIRBY LILLARD, JUDGE

---

[4](...continued)
Tenn. Code Ann. § 20-5-113; *see Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 600 (Tenn. 1999). In *Jordan*, the Tennessee Supreme Court interpreted this statute to permit recovery under two categories of damages. "The first classification permits recovery for injuries sustained by the deceased from the time of injury to the time of death," such as medical expenses, mental and physical pain and suffering, funeral expenses, and lost earning capacity. *Jordan*, 984 S.W.2d at 600. The second classification permits recovery of incidental damages suffered by the claimant as a result of the decedent's death. *Id.* Those damages include the pecuniary value of the decedent's life, which has been defined to include considerations such as "the expectancy of life, the age, condition of health and strength, capacity for labor and earning money through skill, any art, trade, profession and occupation or business, and personal habits as to sobriety and industry." *Id.* (quoting *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 943 (Tenn. 1994)). The Court in *Jordan* held specifically that pecuniary value also includes consortium damages, which are intangible benefits derived from the life of another including, among other things, "attention, guidance, care, protection, training, companionship, cooperation, affection, [and] love." *Id.* at 602.