IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 12, 2023 Session

## SARAH BRYANT v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. T20181874      James A. Hamilton, Commissioner**

_____

**No. W2022-00968-COA-R3-CV**

_____

This appeal follows the dismissal of the appellant's claim for damages in the Tennessee Claims Commission. The appellant, who was injured during a class she participated in while enrolled as a student in the occupational therapy program at the University of Tennessee Health Science Center, submits that the Commission's failure to find her professor negligent was in error. For the reasons stated herein, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission**
**Affirmed and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Andrew C. Clarke, Memphis, Tennessee, for the appellant, Sarah Bryant.

Heather C. Colturi, Associate General Counsel, The University of Tennessee, for the appellee, State of Tennessee.

## OPINION

## BACKGROUND

Sarah Bryant ("Claimant") was injured as a result of a fall that occurred on March 13, 2017, while she was attending class as a student in the occupational therapy program at the University of Tennessee Health Science Center in Memphis. According to the ensuing complaint that Claimant filed in the Tennessee Claims Commission seeking recovery against the State of Tennessee for her injuries, the fall occurred on a day that Claimant and other students were required to engage in a learning activity in which they walked around the perimeter of the classroom to different stations that had been set up by

the class instructor, Stephanie Lancaster ("Professor Lancaster"). In relevant part, Claimant averred that as she was moving from one station to another at the front of the classroom, she allegedly tripped on a laptop computer cord and fell, suffering injuries to her leg. Upon the filing of Claimant's complaint in the Claims Commission, the State of Tennessee filed an answer wherein it denied that it was negligent or in any way caused injury or harm to Claimant. The case was eventually tried before the Claims Commission in April 2022.

The proof at trial consisted of various exhibits, including designated excerpts from Claimant's deposition, as well as live testimony from witnesses called by Claimant. The witnesses called by Claimant were Scott Campbell (a campus safety officer at the time of Claimant's injury), Professor Lancaster, and Claimant herself. Claimant also introduced the deposition of her orthopedic surgeon, Dr. Donald Scott Walsh. Below is a brief overview of the testimony of each of these witnesses, save for Dr. Walsh.

Mr. Campbell stated that his duties as a campus safety officer "mainly concerned emergency management duties and also general safety and occupational safety for the campus." He testified that he was involved in an investigation regarding Claimant's fall. According to his testimony, when he went to where the incident had occurred, "the hazard that was there was no longer there." He did not speak with Claimant or any other students during his investigation, testifying that he only spoke with Professor Lancaster. Mr. Campbell testified that he was unable to ascertain any information regarding the cause of Claimant's fall when he went to the classroom. According to his testimony, prior to the date of Claimant's injury, he was not aware of any slips, trips, and falls in the classroom at the University of Tennessee Health Science Center, including any incidents involving a laptop cord or charger.

According to the testimony of Professor Lancaster, the class session in which Claimant was injured had been divided into two halves. The first half was a lecture format. Following a ten-minute break that occurred upon the conclusion of the lecture format, class reconvened for the second half of the class session in which students participated in an "active learning activity." The learning activity consisted of nineteen stations around the perimeter of the classroom marked by sticky notes that were placed on the wall. Professor Lancaster testified that she put the sticky notes up during the ten-minute break between the lecture and learning activity. During the activity, she explained, students moved from station to station and filled out a piece of paper.

Professor Lancaster claimed that she had checked the classroom for hazards when she initially entered it, stating, "I scanned the classroom." According to her testimony, she walked right past the area where Claimant would later fall. She did not see anything in the electrical outlet in that area as she walked past. She further testified that she had also scanned for hazards during the break, explaining as follows: "There were two purposes to . . . what I was doing on the break. One was placing the sticky notes to complete the setup

of the activity, and the second was scanning the environment checking for hazards or anything else." Professor Lancaster testified that she had not checked every single outlet to see if a laptop cord was plugged in but indicated that, as she posted sticky notes, she had passed by the area where Claimant would later fall and did not see anything on the floor of that area. When asked if she "[w]ould . . . have noticed something [if it had been there]" as she posted sticky notes and looked at the environment, Professor Lancaster responded, "Yes." She also testified that she had given the students instructions before the commencement of the learning activity, namely "to check around their seat and move anything and everything under the table, put it on the table or in their seat." Given her instructions, Professor Lancaster would not have expected a student to charge a laptop during this time. She further stated that, as an occupational therapist for over thirty years, safety was part of her skill set and that she employed environmental scans every day. She testified that, during the learning activity, she monitored students to make sure that they rotated correctly and was "looking all around." According to her, nobody was rushing to complete the tasks during the learning activity, and students were walking "[j]ust at a normal rate of speed."

Professor Lancaster testified that a lecture podium was near the front wall of the classroom and that one round table was also present in each of the corners of the room along the same front wall. The area where Claimant fell was near one of these corner tables, and at the time of the fall, Professor Lancaster testified that she had heard Claimant utter a noise. Professor Lancaster testified that she immediately turned to see what had happened and saw Claimant seated on the floor. According to her testimony, when she went to assist Claimant, she did not observe anything that would indicate why Claimant had fallen. She further testified that, regarding the period of time when she went to try to assist Claimant, she did not hear students say anything about why Claimant had fallen. She testified that she did not have personal knowledge of there being a laptop cord in the area where Claimant fell, whether plugged in or not. Professor Lancaster testified that she had not noticed any students having trouble walking in that area, that nobody had previously reported to her that they had tripped in that area, and that no one had made her aware of a random laptop plugged into an outlet in the area. She claimed that, prior to the incident involving Claimant, she had performed the same learning activity three other times and had never had a student fall during a classroom activity. When subsequently asked if she was aware of any other student or person injuring themselves on a laptop cord during a classroom activity on campus, Professor Lancaster responded in the negative. On the date of the incident involving Claimant, eighteen rotations in the learning activity had been completed before Claimant fell, with thirty-six students walking by the area of Claimant's fall.

Claimant testified that students were allowed to use laptops in Professor Lancaster's class, and when she was asked where laptops would be charged in the classroom where her injury occurred, Claimant responded that students charged their laptops at either one of the outlets at the two corner circle tables or by siting in the back row of the classroom near the

back wall. Claimant testified that Professor Lancaster had not instructed students to put their personal belongings away before the start of the learning activity. Her deposition testimony on the matter, however, which she was asked to read at trial, had been that she did not recall that Professor Lancaster had advised students to put their stuff away but that she was "not saying she didn't." In her trial testimony, Claimant also asserted that Professor Lancaster would not have needed to provide an instruction for students to pick up their belongings, as they would do so anyways.

Concerning her accident during the learning activity, Claimant testified that she felt something crack as she was switching stations and that the next thing she knew she was on the floor. Claimant testified that she fell on a cord and that she had not seen the cord before her fall. Her testimony actually reflected that she had not seen the cord until several minutes after her fall, when she was being pulled up from the floor and placed into a wheelchair. She asserted that she did not know who the cord belonged to, and during her direct examination, she testified that it was located on the floor against the wall and next to a circular table at the front of the classroom. Although at one point her testimony was suggestive of the fact that a cord had been on the floor and not plugged into an outlet, later testimony from Claimant was suggestive of the fact that a cord had been plugged into an outlet.

In one of the admitted excerpts from her deposition, Claimant testified that she did not see the cord before her fall, and in another admitted excerpt, Claimant testified that she was not aware of anyone ever reporting that they tripped over a cord in the classroom before her incident. Moreover, as evidenced in other admitted deposition excerpts, Claimant testified that no other classmates had said they saw the cord before she fell and that no classmate had reported that they had an issue with the cord. Further, in another admitted deposition excerpt, Claimant testified that she did not know how or when the cord got there and that she did not know whose cord it was.

A few months after the trial, the Claims Commission entered an order of dismissal as to Claimant's claim against the State. The Claims Commission found that Professor Lancaster had checked the pathway that the students would be walking when she placed sticky notes on the walls and had "looked for any obstacles that might pose a risk to the students as they moved around the room." The Claims Commission additionally found that Professor Lancaster "saw no obstacles in the pathway," while also finding that, before beginning the learning exercise, she had instructed students to put their personal belongings away. Although the Claims Commission did find that a cord was on the floor at the time Claimant was being helped up after her fall, a cord which the Claims Commission stated "may" have been plugged into an outlet, the Claims Commission noted that "[t]he owner of the cord on which Claimant allegedly tripped was never determined" and that "[n]o proof was offered at trial that established the cord was owned by or plugged into the electrical outlet by a State employee." The Claims Commission further observed that "[n]o testimony was offered at trial which established when the cord may have been placed or

dropped on the floor or plugged into the electrical outlet," additionally stating that "[n]o proof was offered at trial as to how long the cord may have been on the floor or plugged into the electrical outlet."

The Claims Commission also found that Professor Lancaster had performed the same learning exercise on three prior occasions and that "no slips, trips or falls had occurred." Moreover, the Claims Commission found that "[n]o slips, trips or falls involving a laptop cord or laptop charger had ever been reported at [the University of Tennessee Health Science Center] prior to [the date of Claimant's injury.]"

After making the above findings and concluding that there was no proof that a State employee had created a dangerous or defective condition in the classroom and stating that Claimant had not established that any State employee had actual notice of such a condition,[1] the Claims Commission discussed specifically as follows in reference to the issue of whether constructive notice of a dangerous condition was established:

> Once the learning activity commenced, no student or anyone else made mention that a cord was on the floor, plugged into an electrical outlet or otherwise posed a risk to the students. The owner of the cord was never identified. No proof was offered which established when or by whom the cord had been left on the floor or plugged into the electrical outlet. There was no proof as to how long the cord may have been on the floor or plugged into the outlet. The testimony clearly showed the cord was not on the floor or plugged into the electrical outlet just before the learning activity commenced. Professor Lancaster remained in the classroom and continued to survey the room while students were engaged in the learning exercise. However, she never saw a cord. Since the students were given one minute at each station and eighteen (18) of the nineteen (19) stations had been completed, prior to Claimant's fall, approximately twenty (20) minutes had elapsed between the time Professor Lancaster inspected the path the students would follow and Claimant's fall.

> The evidence is insufficient for the Commission to find the cord had

---

[1] As part of its discussion on this issue, it is clear that the Claims Commission accredited the testimony of Professor Lancaster. In relevant part, the order reads as follows:

> While in the process of attaching the sticky notes on the walls, [Professor Lancaster] also checked for any object or obstacle in the path which the students would be following during the upcoming learning exercise. Professor Lancaster found no objects or obstacles in the pathway the students would be walking. Professor Lancaster's testimony on that point was not disputed.

- 5 -

been on the floor or plugged into the electrical outlet for a sufficient amount of time that Professor Lancaster, in the exercise of reasonable care, would or should have detected the cord and either removed the cord or warned the students to avoid the cord.

Constructive notice might also be proven by showing prior falls had occurred. Professor Lancaster had conducted the same learning exercise on three (3) occasions before [Claimant's date of injury[2]] without incident. Furthermore, no reports of a slip, trip or fall involving a laptop cord or laptop charger had been reported at [the University of Tennessee Health Science Center] prior to [Claimant's date of injury]. Claimant did not prove Defendant had constructive notice based on a pattern of conduct, a recurring incident or a continuing condition that would be considered hazardous.[3]

This appeal followed the dismissal of Claimant's claim.

## ISSUE PRESENTED

In her appellate brief, Claimant raises one issue for our review, specifically asserting as follows: "The Trial Court's finding that the State's employee, Professor Lancaster, was not negligent in failing to observe the dangerous condition prior to requiring students to perform a timed exercise is against the clear and manifest weight of the evidence."

## STANDARD OF REVIEW

"Decisions by the Claims Commission are reviewed pursuant to the standard of review for non-jury cases." *Herron v. State*, No. W2020-01731-COA-R3-CV, 2022 WL 7205663, at *2 (Tenn. Ct. App. Oct. 13, 2022). As such, "[t]he factual findings of the Claims Commission are reviewed de novo with a presumption of correctness," and that presumption "must be honored unless this court finds that the evidence preponderates against those findings." *Id.* Questions of law are reviewed de novo but without a presumption of correctness. *Id.* Concerning matters of credibility involving witness testimony, we accord great deference to the determinations made by the Claims Commission and "will not re-evaluate such determinations absent clear and convincing evidence to the contrary." *Skipper v. State*, No. M2009-00022-COA-R3-CV, 2009 WL 2365580, at *2 (Tenn. Ct. App. July 31, 2009).

---

[2] As a technical matter, we observe that the Claims Commission listed a date three days before the date of Claimant's injury in this particular place in the order, but the intended temporal reference would appear to be rather clear. Indeed, a parallel finding in the "Findings of Fact" section of the order listed the date of Claimant's injury in reference to the same concern.

[3] The order subsequently concluded by stating that "Claimant failed to prove Defendant breached its duty of care."

**DISCUSSION**

In pursuing her premises liability case against the State on appeal, Claimant attempts to explain in her brief why the Claims Commission erred in denying her any recovery under Tennessee Code Annotated section 9-8-307(a)(1)(C). That statute specifically provides as follows:

(a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101, falling within one (1) or more of the following categories:

. . . .

(C) Negligently created or maintained dangerous conditions on state controlled real property. The claimant under this subdivision (a)(1)(C) must establish the foreseeability of the risks and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures[.]

Tenn. Code Ann. § 9-8-307(a)(1)(C). Tennessee Code Annotated section 9-8-307(a)(1)(C) "limits recovery to claimants who meet the requirements enumerated in the statute," *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999), and therefore a claimant has the burden of proof to establish that the State negligently created or maintained a dangerous condition, that the risk presented by this condition was foreseeable, and that notice had been given to the proper official prior to the injury in sufficient time for remedial action to be taken. *Id.* As the Tennessee Supreme Court has further noted:

For purposes of determining liability under the statute, the State is to be treated as a private individual. Thus, for the purposes of deciding the State's liability after removal of immunity, the statute codifies the common law obligation of owners and occupiers of land. We note that any discussion of "negligently created or maintained conditions," "reasonable care," and "foreseeability of risks" inescapably involves traditional principles of negligence law generally, these being: (1) a duty of care owed by the Defendant to the Plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause.

*Hames v. State*, 808 S.W.2d 41, 44 (Tenn. 1991) (internal citations omitted). In addition to the general negligence elements, the law provides that, "[i]n order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective

condition to exist on its premises, the plaintiff must prove . . . that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). When a dangerous condition is created by a third party as opposed to the owner or his agent, constructive notice may be established through proof that

> (1) a dangerous condition existed for such a length of time that a reasonably prudent person should have been aware of it or (2) the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition" which would also put the premises owner on constructive notice.

*Flagg v. Hudson Constr. Co.*, No. E2017-01810-COA-R3-CV, 2019 WL 2270259, at *9 (Tenn. Ct. App. May 28, 2019) (citing and quoting *Blair*, 130 S.W.3d at 764, 765-66).

Here, Claimant expressly acknowledges that "there is no evidence that the State created the dangerous condition or that the State had actual notice of the dangerous cord." Thus, in light of the foregoing overview of the governing law, the pertinent questions as to the State's potential liability, which are issues of constructive notice, are (a) whether a dangerous condition existed for such a length of time that a reasonably prudent person should have been aware of it or (b) whether there is proof of a dangerous condition that resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition" which would also put the premises owner on constructive notice.

As to the former of these questions, we conclude that there is no error in the Claims Commission's failure to find that a dangerous condition existed for such a length of time that Professor Lancaster should have been aware of it. Of note, we highlight the Claims Commission's observation that "[n]o proof was offered which established when or by whom the cord had been left on the floor or plugged into the electrical outlet" and that "[t]here was no proof as to how long the cord may have been on the floor or plugged into the outlet." "As a general rule, constructive knowledge cannot be established without some showing of the length of time the dangerous condition had existed." *Hardesty v. Serv. Merch. Co., Inc.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997).

Although Claimant speculates in her brief that the cord must have been plugged in throughout the entire class, the Claims Commission, by way of reliance on Professor Lancaster's testimony, concluded that a cord was not even on the floor in the area where Claimant fell before the start of the learning activity. As we noted earlier, the Claims Commission found that Professor Lancaster had checked the pathway that the students would be walking when she placed sticky notes on the walls and had not seen any obstacles in the pathway. Of note, much of the argument offered by Claimant on appeal, particularly

as it relates to Professor Lancaster's alleged negligence, actually appears to wholly misapprehend Professor Lancaster's testimony concerning her inspections of the classroom. Indeed, as we read her appellate brief, Claimant reaches a conclusion that Professor Lancaster's inspections were insufficient from the fact that Claimant's injury occurred at the front of the classroom and because Professor Lancaster's inspections were, supposedly, in relation to the "pathways between the desks." In pertinent part, for instance, Claimant argues as follows: "Significantly, the area where [Claimant] fell was not between the pathways of the desks, but at the front of the classroom, in a corner, near a table." The problem with this argument is with Claimant's understanding that Professor Lancaster had specifically inspected the "pathways between the desks" and the concomitant suggestion that the front of the classroom was ignored. Professor Lancaster's testimony reflected that she had, in fact, inspected the areas where the students would be walking during the learning activity, including the area where Claimant fell. Indeed, as we noted earlier in this Opinion, Professor Lancaster testified that she had checked for hazards when she initially entered the classroom, that she had walked right past the area where Claimant would later fall, and that she did not see anything in the outlet in that area as she walked past. Moreover, we have noted that Professor Lancaster testified that she had scanned for hazards during the class break, had passed by the area where Claimant would later fall, and did not notice anything on the floor of that area. Her testimony showed she had been looking at the floor space, and the Claims Commission's order signals that it accredited Professor Lancaster's testimony that she did not see anything in the area of the fall before the start of the learning activity. Given our review of the record and the Claims Commission's determinations, including the Claims Commission's observations about the lack of proof as to how long a cord had been in the area of Claimant's fall, we conclude that there is no error in the Claims Commission's failure to find that a dangerous condition existed for such a length of time that Professor Lancaster should have been aware of it.

As for the Claims Commission's conclusion that "Claimant did not prove Defendant had constructive notice based on a pattern of conduct, a recurring incident or a continuing condition that would be considered hazardous," we observe that Claimant does not appear to advance any actual contention in her brief that the type of condition at issue here had previously occurred with any type of frequency. Instead, appearing to focus entirely on Professor Lancaster's "setup" of the learning activity but without any factual articulation as to how this case involves a "common occurrence,"[4] Claimant purportedly attempts to advance an argument under the "method of operation" theory, a theory which this Court previously noted has been rejected by the Tennessee Supreme Court. *Benn v. Pub. Bldg. Auth. of Knox Cty.*, No. E2009-01083-COA-R3-CV, 2010 WL 2593932, at \*5 n.2 (Tenn. Ct. App. June 28, 2010). In discussing how a litigant can prove constructive notice of a

---

[4] The method of proving constructive notice by way of showing "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence," *see Blair*, 130 S.W.3d at 765-66, is commonly known as the "common occurrence" theory. *Merrell v. City of Memphis*, No. W2013-00948-COA-R3-CV, 2014 WL 173411, at \*5 (Tenn. Ct. App. Jan. 16, 2014).

dangerous condition by showing "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence," *Blair*, 130 S.W.3d at 765-66, the Tennessee Supreme Court previously stated as follows

> Allowing plaintiffs to prove constructive notice in this manner relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence so long as plaintiffs can show that the dangerous condition was part of "a pattern of conduct, a recurring incident, or a general or continuing condition" such that its presence was reasonably foreseeable to the premises owner.
>
> **Method of operation is not a useful title for this theory.** The term method of operation suggests that the owner's method of operation, or way of doing business, is a part of the inquiry. But under the theory we now adopt, the owner's way of doing business is not determinative. **The question is whether the condition occurs so often that the premises owner is put on constructive notice of its existence.** The condition could be caused by the owner's method of operation, by a third party, or by natural forces. A premises owner is put on constructive notice of a dangerous condition that is "a recurring incident, or a general or continuing condition" regardless of what caused the condition, and regardless of whatever method of operation the owner employs. Certainly there will be cases where the method of operation chosen by the owner creates a dangerous recurring condition. But there is no logical reason to impute constructive notice only in those cases where the condition can be linked to the owner's business activities, so long as a plaintiff can show that the condition was a "recurring incident or general or continuing condition."

*Id.* at 766 (emphasis added) (internal footnote omitted).

Based on the above law, it is clear that Claimant's focus on Professor Lancaster's method of operation is misplaced insofar as the notion of constructive notice under the common occurrence theory is concerned. Likewise, her failure to explain how the condition at issue here "occurs so often that the premises owner is put on constructive notice of its existence," *id.*, is fatal.

## CONCLUSION

In light of the foregoing discussion, we discern no error in the Claims Commission's dismissal of Claimant's case and therefore affirm its judgment.

s/ Arnold B. Goldin

- 10 -

ARNOLD B. GOLDIN, JUDGE