Lawrence A. SANDERS, and wife Pamela Sanders, individually and as parents and next friends of Andrew Sanders, Plaintiffs–Appellees,

v.

STATE of Tennessee, Defendant–Appellant.

Court of Appeals of Tennessee, Western Section at Nashville.

Sept. 20, 1989.

Application for Permission to Appeal Denied by Supreme Court, Jan. 2, 1990.

Jon E. Jones, Cookeville, for plaintiffs-appellees.

Charles W. Burson, Atty. Gen. and Reporter, George H. Coffin, Jr. Asst. Atty. Gen., for defendant-appellant.

CRAWFORD, Judge.

Defendant, State of Tennessee, appeals from a judgment rendered by the Claims Commission awarding claimant Andrew Sanders $33,000.00 and his parents, claimants Lawrence and Pamela Sanders $12,000.00.

The facts are virtually undisputed. On May 25, 1987, Andrew Sanders, the nine year old son of Lawrence and Pamela Sanders, was climbing on some wooden monkey bars at a playground area in the Cumberland Mountain State Park near Crossville. He apparently lost his hold on the bar while climbing, fell to the ground and struck his head on an exposed concrete footing which held one of the monkey bar supports in the ground. The concrete footing had a protruding nub and Andrew's head struck this nub causing a depressed fracture of his skull.

Andrew was treated initially at Crossville Hospital, and was later taken by ambulance to Vanderbilt Hospital in Nashville. Subsequently, Andrew underwent surgery in which some bone fragments were removed from his head resulting in a small area left unprotected by the skull.

The jurisdiction of the Tennessee Claims Commission was invoked pursuant to T.C.A. § 9–8–307(a)(1)(C) (1987) which states:

**9–8–307. Jurisdiction—Claims—Waiver of actions—Standard for tort liability—Damages—Immunities—Definitions—Transfer of claims.—(a)(1)** The

commission or each commissioner sitting individually shall have exclusive jurisdiction to determine all monetary claims against the state falling within one (1) or more of the following categories:

\* \* \* \* \* \*

(C) Negligently created or maintained dangerous conditions on state controlled real property. The claimant under this subsection must establish the foreseeability of the risks and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;

The evidence established and the state virtually conceded that the exposed concrete footing was a dangerous condition and injury therefrom was foreseeable.

The sole issue on appeal is whether the Commissioner erred in concluding that the proper state officials had notice of a dangerous condition as required by T.C.A. § 9–8–307(a)(1)(C). The Commissioner found that requisite notice had been given to the proper state officials and we quote the pertinent findings:

\* \* \* \* \* \*

4. The crucial question in this set of facts revolves around whether proper State officials had adequate notice of the dangerous condition in sufficient time to have taken some action. The simplest analysis of the contested facts is as follows: There was a one and one-half to one and three-quarter protrusion of the concrete footing above the surface of the ground with a nub on it. This condition came into existence one of two ways. Either it was created at the time the footing was first poured, or the ground was worn away around it leaving it exposed. If the exposed footing came into existence when it was first poured, the State had actual notice of this condition when they completed the pouring thereby creating a dangerous condition. There has been sufficient time for the State officials to have acted. In the alternative, this condition came into existence over a period of time when the soil wore away from around the footing (which is assumed to have initially been even with or below the surface of the ground). In considering this, the Commission observes from commonsense observation of soil erosion that soil erodes when it is bare and is exposed to wind, water, or scuffing feet (for playground). If the soil is covered with a mulch such as wood chips which were used on this playground, then the wood chips may wear away, but so long as an adequate layer of wood chips is maintained, the soil remains. Since the soil wore away there was negligent maintenance and since wood chips were on site, the State employee who first put down wood chips saw the footing and thus the State had actual notice.

5. The concrete protruded at least one and one-half inches above the level of the ground. This had to occur either when the concrete was first poured, or else it occurred over a long period of time when the ground was worn away from the concrete footing. If it jutted upward at the time the concrete footing was poured, the State had actual notice of a dangerous condition. In order for the ground to wear away from a concrete footing, the ground must be exposed to the scuffing of feet and the wearing from weather. The scuffing and wearing cannot occur if there is a layer of wood chips, sand, mulch, etc., upon the ground. Therefore, for wearing to have produced the raised concrete, the bare ground had to have been visible over a rather extended period of time. The Commission concludes that somewhere in the course of time, some employee observed the exposed concrete footing and brought the wood chips, and at that point the State had notice. Both of these notices are actual notices. They are not presumed. Each is a reasonable inference from facts.

6. Obviously, in the second inference, the concrete footing was not immediately dealt with. It is possible the employee did not think to make note of it. It is possible the employee waited to report it at a safety meeting, but forgot it when the safety meeting occurred, or perhaps

the employee felt that padding the jutting concrete footing with wood chips would be sufficient. There may be other reasons why the notice of the exposed footing failed to reach park records.

■ This is a direct appeal from the Tennessee Claims Commission and is governed by the Tennessee Rules of Appellate Procedure. T.C.A. § 9–8–403(a)(1) (1987). Since this is a nonjury case, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the Commission. Unless the evidence preponderates against the findings we must affirm, absent error of law. *Learue v. State*, 757 S.W.2d 3 (Tenn.App.1987); T.R.A.P. 13(d).

■ The state asserts that it produced as witnesses persons who would qualify as proper state officials to which notice of an unsafe condition should be given, and that they all testified that they had no knowledge of the protruding concrete footing prior to the accident, although frequent inspections were made in an effort to discover any unsafe conditions. The state insists, therefore, that it had no notice of the unsafe condition as required by the statute. We believe the state is misconstruing the statute. T.C.A. § 9–8–307 also contains the following pertinent provisions:

(c) The determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care. (d) The state will be liable for actual damages only. No award shall be made unless the facts found by the commission would entitle the claimant to a judgment in an action at law if the state had been a private individual.... ﹐

The premier rule of statutory construction is to ascertain and give effect to the legislative intent and in ascertaining this intent, we look to the general purpose to be accomplished by the legislation. *Tidwell v. Collins*, 522 S.W.2d 674 (Tenn.1975).

The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language when read in the context of the entire statute and without any forced or subtle construction to limit or extend the import of the language. *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn.1977); *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn.App.1983). It is the duty of the Court to reconcile inconsistent or repugnant provisions of a statute and construe a statute so that no part will inoperative, superfluous, void or insignificant. The court must give effect to every word, phrase, clause and sentence of the act in order to achieve the legislature's intent and it must construe a statute so that no section will destroy another. *City of Caryville*, 660 S.W.2d at 512. The statute is to be construed with reference to pre-existing law and it does not change pre-existing law further than it expressly declares or necessarily implies. *In re Estates of Deskins*, 214 Tenn. 608, 381 S.W.2d 921 (1964); *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495 (Tenn.App.1983).

From the usual and ordinary meaning of the words of this statute, we believe that T.C.A. § 9–8–307(a)(1)(C) removes the state's immunity to the same extent as the obligation of a private owner or occupier of land. In other words, for the purposes of determining the state's liability after removal of immunity, the statute merely codifies the common law obligation of the owner or occupier of land. Owners and occupiers of land have an obligation to exercise ordinary care and diligence in maintaining their premises in a safe condition for visitors upon the premises, and are under an affirmative duty to protect these persons against dangers of which they know or which, with reasonable care, they might discover. *McCormick v. Waters*, 594 S.W.2d 385 (Tenn.1980).

In *Jones v. Zayre, Inc.*, 600 S.W.2d 730 (Tenn.App.1980), the Eastern Section of this Court said:

Before an owner or operator of premises can be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, it must have (1) been created by the owner or operator or his agent or, (2) if the condition was created by someone other than the owner or operator or his agent, there must be

actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident. *Gargaro v. Kroger Grocery & Baking Co.*, 22 Tenn.App. 70, 118 S.W.2d 561 (1938). 600 S.W.2d at 732.

In the case at bar, the state constructed the offending instrumentality and obviously must be charged with notice of its condition as constructed. There was evidence in the record that the exposed footing appeared to be of long standing. If, in fact, it was covered by dirt at the time of the initial construction, the evidence established that the state officials were well aware of erosion and soil washing problems occasioned by heavy rains and usual playground activity. Wood chips were placed beneath the bars and replaced periodically as they were washed away or displaced. There was evidence that the height of the concrete footing above the soil indicated that if it was not constructed in that manner, it reached that condition over a protracted period of time. The Commissioner found that it could be inferred that the state employee who replaced the wood chips on the bare ground saw or should have seen the exposed concrete. We believe that this is a reasonable conclusion from the evidence. Even though evidence may be susceptible to different inferences, the appellate court will not disturb findings of the trial court where such findings are supported by inferences which may be reasonably drawn from the evidence. *American Precision, Inc. v. Ottinger*, 562 S.W.2d 818 (Tenn.1978); *Sudduth v. Williams*, 517 S.W.2d 520 (Tenn. 1974); *Morrow v. Town of Madisonville*, 737 S.W.2d 547 (Tenn.App.1987). Considering the record as a whole, the evidence does not preponderate against the finding of the Commissioner that the proper state officials had notice of the unsafe condition for a sufficient length of time prior to the accident within which to correct the deficiency.

Accordingly, the judgment of the Commissioner is affirmed and this case is remanded for such further proceedings as may be necessary. Costs of appeal are assessed against the appellant.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.