IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 20, 2004 Session

## NORMAN HAMBY v. STATE OF TENNESSEE

**Direct Appeal from the Tennessee Claims Commission**
**No. 20100628      Nancy C. Miller-Herron, Commissioner**

---

**No. W2003-02947-COA-R3-CV - Filed August 2, 2004**

---

Plaintiff filed suit against Defendant seeking damages for injuries caused by a fall that occurred on Defendant's premises. The Tennessee Claims Commission ruled in favor of Defendant. Plaintiff appealed to this Court. This Court reversed the commission's decision and remanded for a determination of comparative fault. Upon remand, the commission ruled that Defendant had breached its duty but found that Plaintiff was at least 50% at fault for his injuries, thereby barring Plaintiff's recovery. In the absence of a transcript to support Plaintiff's position, we must affirm the commission's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Stephen R. Leffler, Memphis, Tennessee, for the appellant, Norman Hamby.

Peter M. Foley, Knoxville, Tennessee, for the appellee, University of Tennessee.

### OPINION

This Court first addressed this case in *Hamby v. State of Tennessee*, W2002-00928-COA-R3-CV, 2002 WL 31749450 (Tenn. Ct. App. Dec. 4, 2002):

> This is a premises liability case arising from Plaintiff's fall into a ventilation pit on the University of Tennessee at Memphis (referred to herein as UT) campus when an aluminum grate covering the opening collapsed while Plaintiff was standing on it. UT retained the Pickering Firm to perform an investigation regarding underground fuel storage tanks and boiler fueling problems. Norman R. Hamby ("Appellant," "Plaintiff," or "Mr. Hamby") is senior design engineer with the

Pickering Firm. On March 17, 2000, Mr. Hamby, accompanied by Mr. Peter Hurda of Cummins Mid-South, arrived at the UT Center for Health Sciences in Memphis.[1] Upon arrival, Mr. Hamby checked in with UT employee Ed Justis at the physical plant then proceeded to the Dunn Dental Building on the UT campus.[2] Outside the Dunn Dental Building, facing Union Avenue, is a ventilation system. This ground-level opening is approximately thirty (30) feet long and approximately five (5) to seven (7) feet deep. The surface of the opening is approximately ten (10) inches above ground and the entire surface of the opening is covered with a series of aluminum grates.[3] At the time of the accident, each grate rested on a 1 to 1 ½ inch concrete ledge. The equipment that Mr. Hamby was on site to inspect was located at the bottom of the ventilation system in the basement of the Dunn Dental Building. In order to get a better look at the equipment, Mr. Hamby stepped onto one of the grates. The grate slipped off the ledge and both the grate and Mr. Hamby fell into the pit. Mr. Hamby suffered injury to his right shoulder and left knee.

Richard Tiebout, the manager of maintenance and construction for UT, testified that he had not inspected the ventilation system prior to the accident but had subsequently modified the grates so that they sat on a three (3) inch shelf instead of the 1 ½ inch ledge.[4] The same type and grade of aluminum grates was used in the modification.[5] Mr. Tiebout also indicated that the grates were only meant as a covering for the ventilation system and not as a walkway over the area; however, he does testify that there were no signs or warnings posted to indicate that the grates were not to be walked on or were otherwise unsafe. The ventilation system is not accessible by walkway nor is it near an entrance to the Dunn Dental Building. There is no requirement or policy by UT that such grated openings must

---

[1]Mr. Hurda was accompanying Mr. Hamby for the purpose of providing pricing for whatever equipment Mr. Hamby recommended so that the Pickering Firm could give an accurate quote to UT.

[2]Mr. Justis did not accompany Messrs. Hamby and Hurda to the site where the accident occurred. The UT Policies on Safety and Health include a provision wherein "the campus police shall restrict areas of risk. Visitors shall be required to be accompanied by or under the direct responsibility of an authorized UT Memphis student, faculty or staff member."

[3]To clarify, the 10 inches above ground level is the result of a concrete "curb" around the perimeter of the opening. In order to step onto the grating from the ground, one must step up and over the curb.

[4]Mr. Teaford indicates that no inspection of the grate was done because, prior to Mr. Hamby's accident, UT had had no other reports of incidents or injuries associated with any grate coverings.

[5]Mr. Hugh Teaford, the safety officer for UT, testified that the new grates were still "springy" when stepped on and should not be used as a walkway. According to Mr. Teaford, steel replacement grates were not used because the area was not meant as a walkway but only to keep someone who might trip from falling into the pit. Additional work was needed in [the] form of heavier and more secure grates in order to make the area transversable.

be surrounded by guardrails or that signs must be posted.[6] Prior to Mr. Hamby's accident, the grating had been in place for twenty (20) to twenty-five (25) years without incident.

On October 19, 2000, Mr. Hamby filed a claim against the State of Tennessee for personal injuries under T.C.A. § 9-8-307(a)(1)(C).[7] On January 24, 2001, the Division of Claims Administration notified Mr. Hamby that it was unable to act on his claim within the ninety (90) day time limit, and the claim was transferred to the Claims Commission pursuant to T.C.A. § 9-8-402(c). On January 16, 2002, the case was heard before the Honorable Randy Camp, Commissioner of Claims, Western Division. At the close of all proof, the Commissioner ruled from the bench for the State of Tennessee. A Final Order was entered on January 23, 2002. The Order stated that "the risk was unforeseeable and the University had no notice of the danger until after Mr. Hamby fell." The Commissioner did not address the issue of comparative fault.

Mr. Hamby appeals and presents one issue for review: Whether the University of Tennessee at Memphis had actual or constructive knowledge of the dangerous condition of the defective grating which collapsed causing injury to Norman Hamby.

Hamby, 2002 WL 31749450, at *1-2. In addressing Mr. Hamby's sole issue on appeal, this Court engaged in the following analysis:

A negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See, e.g., Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993). The duty element is a question of law requiring the court to determine "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Id.* at 870 (quoting W. Page Keeton, Prosser & Keeton on Torts, § 37 at 236 (5th ed. 1984)). In order to answer this question in the context of a T.C.A. § 9-8-307(a)(1)(C) claim, we must first decide what duty the state owes to invitees on state property. To that end, the following provisions of T.C.A. § 9-8-307 are also applicable to this case:

---

[6]Mr. Tiebout also testified that there were no TOSHA warnings or citations relating to UT's inspection of the grating. Mr. Teaford testified that UT is "self-inspecting" and presents reports to TOSHA every year.

[7]The University of Tennessee at Memphis is a subdivision of the State of Tennessee.

(c) The determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care.

(d) The state will be liable for actual damages only. No award shall be made unless the facts found by the commission would entitle the claimant to a judgment in an action at law if the state had been a private individual . . .

*Id.*

This Court has previously addressed the issue of what, if any, duty the state owes to visitors who come onto property owned by the state and has reached the following conclusion:

> From the usual and ordinary meaning of the words of this statute, we believe that T.C.A. § 9-8-307(a)(1)(C) removes the state's immunity to the same extent as the obligation of a private owner or occupier of land. In other words, for the purposes of determining the state's liability after removal of immunity, the statute merely codifies the common law obligation of the owner or occupier of land. Owners and occupiers of land have an obligation to exercise ordinary care and diligence in maintaining their premises in a safe condition for visitors upon the premises, and are under an affirmative duty to protect these persons against dangers of which they know or which, with reasonable care, they might discover.

*Sanders v. State,* 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989) (citing *McCormick v. Waters,* 594 S.W.2d 385 (Tenn. 1980)).

Appellee argues that its duty to Mr. Hamby falls within an exception to the general rule as outlined above. Relying in part upon *Blair v. Campbell,* 924 S.W.2d 75 (Tenn. 1996), the State of Tennessee takes the position that, although a premises owner generally owes a contractor the duty to provide a reasonably safe workplace, that duty does not apply when the contractor is injured while making the specific repairs called for in the contract. The gravamen of the State's theory is that the grates that covered the ventilation area were part of the equipment Mr. Hamby was on site to inspect. From the record before us, we cannot reach this conclusion. The Pickering Firm was retained by UT to do a study of the underground equipment housed in the basement and extending into the ventilation area of the Dunn Dental Building. Contrary to the State's argument, the grates covering the opening to the ventilation pit were not intimately associated with the equipment Mr. Hamby was there to

inspect.[8] Consequently, the State owed Mr. Hamby, its business invitee, a duty to remove or warn against latent or hidden dangerous conditions on the premises of which the State was or should have been aware through the exercise of reasonable diligence. *See Blair v. Campbell,* 924 S.W.2d at 76.

The State also argues that, at the time of Mr. Hamby's accident, the grates were being used in a manner not intended. In short, the grates were not meant as a walkway and Mr. Hamby, because of his engineering expertise and experience, should have found that fact open and obvious. It is true that the traditional rationale for imposing a duty on an owner/occupier of land to a visitor or invitee was the owner's superior knowledge of conditions on the premises. *See, e.g.*, *Kendall Oil Co. v. Payne,* 41 Tenn. App. 201, 293 S.W.2d 40, 42 (Tenn. Ct. App. 1955). However, our Supreme Court has recently held that a duty may exist even where the injury-causing condition is alleged to be open and obvious to the plaintiff:

> That a danger to the plaintiff was open and obvious does not, ipso facto, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if open and obvious, outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Coln v. City of Savannah,* 966 S.W.2d 34, 43 (Tenn. 1998).

Of course, the duty due an invitee exists only while the visitor is on the part of the premises which the occupier has opened to the visitor for the purpose that makes the visitor an invitee. The *Restatement (Second) of Torts* § 332 refers to this as the "area of invitation." The area of invitation will vary according to the facts of each case but in all cases the area will extend to all parts of the premises to which the purpose may reasonably be expected to take the invitee, and to those areas which are located so as to lead the invitee to reasonably think they are open to his or her

---

[8]Take the following analogous situation by way of clarification: A homeowner contracts with a plumber to repair a hot water heater located in the homeowner's basement. In order to enter the basement, the plumber must open a door and go down a stairway. If the plumber is injured by the door or on the stairway because of some defect that the homeowner could have discovered with reasonable care, the homeowner has breached a duty to the plumber. If, on the other hand, the plumber makes it safely to the water heater and is subsequently injured because of a loose valve or some other defect in the appliance, the homeowner has breached no duty.

purpose. *See* Prosser and Keeton on Torts § 61 at 424 (5th ed. 1984). On the other hand, there is no liability for harm resulting from "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Id*. at 426. In this regard, the "mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the [fact finder] may reasonably conclude that due care would have discovered it." *Id.* at 426-27. In short, foreseeability is the gravamen of negligence:

> Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.

*Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 178 (Tenn. 1992) (citations omitted).

Turning to the facts of this case, we find that UT could reasonably have expected, and indeed should have expected, that Mr. Hamby's inspection would take him to the ventilation pit. Since Mr. Hamby's purpose for being on UT's campus was to observe the equipment that lay at the bottom of that pit, he was well within reason to think that the area of invitation included the grates that covered the surface of that pit. Because the grates were within the area of invitation, Mr. Hamby's accident was not a "remote possibility" but rather a "foreseeable probability." Even independent of Mr. Hamby's accident, the record indicates that a similar accident was foreseeable. The State's witness, Mr. Richard Teaford, testified that "this grating was just to prevent people from tripping and falling into the pit. . . ." If one of the purposes of the grating was to keep a person who tripped from accidentally falling into the pit, UT had a duty to inspect the grates to ensure that they would support the weight of a human body. Whether the body tripped and fell upon the grating or stepped over the concrete curb onto the grating is not paramount, although a falling body would certainly exert more force than a standing body. What is important is UT's contemplation that a person, by whatever means, could foreseeably make his or her way onto the grates.

The State also relies in part upon the fact that the grates had been in place for some twenty (20) to twenty-five (25) years without incident to prove that the accident at issue here was not a foreseeable probability. We cannot agree. In light of the duty imposed upon UT as discussed in depth above, UT should have inspected this area long before, and regardless of, Mr. Hamby's business on the campus. Our interpretation is that UT had twenty (20) to twenty-five (25) years in

which to conduct what should have been a routine inspection-an inspection that would have shown the dangerous condition presented by an easily accessible grating system supported only by a 1 ½ inch ledge. The fact that no one was injured prior to Mr. Hamby falls under the auspices of luck and cannot be the basis for relieving UT of a clear duty.

In addressing the issue before us, our task does not end with our finding that the Plaintiff satisfied the basic elements of a negligence claim. In *Jones v. Zayre, Inc.,* 600 S.W.2d 730 (Tenn. Ct. App. 1980), the Eastern Section of this Court said:

> Before an owner or operator of premises can be held liable for negligence in allowing a dangerous or defective condition to exist on its premise, it must have (1) been created by the owner or operator or his agent or, (2) if the condition was created by someone other than the owner or operator or his agent, there must be actual or constructive notice on the part of the owner of operator that the condition existed prior to the accident. *Gargaro v. Kroger Grocery & Baking Co.,* 22 Tenn.App. 70, 118 S.W.2d 561 (1938).

600 S.W.2d at 732.

Before discussing the issue of notice as it relates to this case, we must first be clear that the issue of comparative fault is not before this Court. Furthermore, the issue of comparative fault is not part of a notice analysis. From our reading of the record, it appears that the Commissioner, in his ruling from the bench, ties Mr. Hamby's alleged fault into his ruling on the issue of notice and foreseeability. The Appellant relies, in part, upon this Court's decision in *Sanders v. State*, 783 S.W.2d 948 (Tenn. Ct. App. 1989). In *Sanders* a nine-year-old boy sustained a head injury when he fell from playground equipment at a Tennessee state park. The injury resulted from an exposed concrete footing. In his ruling from the bench, the Commissioner distinguishes Mr. Hamby's claim from *Sanders* as follows:

> In [the *Sanders*] case the Claims Commission found that the State did have notice of a dangerous condition, that being the exposed concrete footing in either one of two ways: Either it was built that way by the State with it exposed or over a period of time, the footing became exposed and the employee who had corrected any erosion that might have occurred to the exposed footing would have had actual notice of the dangerous condition by not filling in that area with soil and wood chips or either the State constructed it that way and would have known by the construction that it was a

dangerous condition with it being exposed and children would be playing there.

The Court of Appeals found that the State was liable in that case because of the knowledge in either of the ways that the State would have had that that condition was dangerous.

I have to distinguish the Sanders case from the claim we have here. In the Sanders case, we have a 9 year old child playing in a playground that was built for the purpose of children playing there.

In this case, we have a situation where these grates were covering an area that was not intended for walking and was out of the normal traffic area. So, I have to distinguish it on that basis, with the age of the Claimant and the fact that Mr. Hamby had been on these grates before.

He had had training and experience in the area that he was out there to do the study in, and he was familiar with the grates and even testified that he had walked on them in the past. The problems I have here with this claim are the foreseeability and notice issues.

* * *

Mr. Hamby was a professional person. He was there for a particular purpose. He was familiar with that area and had been on those grates before. There is no testimony that any action of any kind ever occurred on these grates. There is no testimony that these grates were in a particular area where it would even be foreseeable that someone would walk on them unless they desired to do so, that it was their intent to do so.

Foreseeability is the test under negligence as discussed above and comparative fault is a separate inquiry altogether. The issue of notice should be decided under the two-pronged test outlined in *Jones v. Zayre, Inc.* The first question is whether the state or its agent(s) created or constructed the offending instrumentality. If that answer is yes, the inquiry stops and the state is charged with actual notice. If the answer is no, then there must be actual or constructive notice on the part of the owner of operator that the condition existed prior to the accident[.] The age, experience, profession, or other attributes of the injured person are not part of the notice inquiry. Likewise, neither the placement of the instrumentality, nor its intended purpose is relevant to the issue of notice. Having already addressed the

grating's purpose and placement under the duty analysis above, we leave Mr. Hamby's experience and actions to the arena of comparative fault.

We find that this case is not distinguishable from *Sanders* on the issue of notice. In *Sanders*, we said that, "In the case at bar, the state constructed the offending instrumentality and obviously must be charged with notice of its condition as constructed." 783 S.W.2d 948, 952 (Tenn. Ct. App.1989). *See also McGaughy v. City of Memphis,* 823 S.W.2d 209, 214-15 (Tenn. Ct. App.1991). According to the testimony in this case, the grating was part of the original construction of the Dunn Dental Building. Before this accident, the grating had remained unchanged in the twenty (20) to twenty-five (25) years since the building was completed. Testimony indicated that the grating was there to keep debris out of the pit and to protect anyone from falling into it. Although the grating succeeded in keeping debris from the machinery below, it was woefully inadequate for its other function of keeping people from falling into the pit. Because we find that the state or its agent(s) created the offending instrumentality when it constructed the Dunn Dental Building, we must charge them with notice under the first prong of *Jones v. Zayre, Inc.*

For the foregoing reasons, we find that the evidence preponderates against the Commissioner's ruling. We, therefore, reverse the order of the Commissioner and remand the case for further proceedings which may include the issue of comparative fault. Costs of appeal are assessed against the appellee, State of Tennessee.

*Hamby*, 2002 WL 31749450, at *2-7. Upon remand, the Tennessee Claims Commission conducted a second hearing on October 28, 2003, before the Honorable Nancy C. Miller-Herron, Commissioner. In a final order, entered November 20, 2003, the Commissioner stated:

> After reviewing the transcript of the prior hearing, as well as the testimony in this cause and after assessing the credibility of witnesses and reviewing carefully the depositions submitted for proof and the entire record as a whole, the Commissioner FINDS the Claimant met his burden of proof regarding the elements of negligence on the part of the state. The Commissioner also FINDS that the state's negligence was a proximate cause of Mr. Hamby's injuries.
>
> However, the evidence presented makes it clear that the Claimant bears fault in this case as well. Mr. Hamby is a professional with three (3) years of formal training in engineering and forty-four (44) years of experience in engineering design. Although he is not a licensed engineer, he was on the UT campus that day in his capacity in electrical engineering design.

Mr. Hamby admitted in the January, 2002 trial [the First Hearing] that he did not inspect the grate to make sure it was well seated or . . . if it was hanging correctly when he stepped on it. Mr. Hamby also admitted during cross examination that he could have assessed the pit for his inspection by removing the grate and descending into the pit on a ladder.

The Commissioner FINDS the State has satisfied its burden of proof and has established that Mr. Hamby is more than fifty percent (50%) at fault for his injuries. Because of Mr. Hamby's training, experience, and knowledge, the Commissioner FINDS that a majority of the fault must be allocated to him. Thus because Mr. Hamby's own negligence exceeds fifty percent (50%), it bars any recovery in the cause.

Mr. Hamby timely filed his notice of appeal.

## Issue Presented

Mr. Hamby raises the following issue, as we restate it, for our review:

Whether the Claims Commission erred in allocating 50% or more of fault to Mr. Hamby.

## Standard of Review

We review a decision from the Tennessee Claims Commission in accordance with the following standard:

Since this is a nonjury case, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the commission. Unless evidence preponderates against the findings[,] we must affirm absent error of law.

*Dobson v. State*, 23 S.W.3d 324, 328-29 (Tenn. Ct. App. 1999) (citing Tenn. Code Ann. § 9-8-403(a)(1) (1999); Tenn. R. App. P. 13(d); *Sanders v. State*, 783 S.W.2d 948 (Tenn. Ct. App. 1989)).

## Analysis

Mr. Hamby contends that the claims commission erred by concluding that he was at least 50% at fault because the decision "was reached with no evidence to support it and is in opposition to all of the evidence that the Claims Commissioner actually heard." In support of his argument, Mr. Hamby relies upon testimony given at the commission hearings. However, there is only limited testimony contained in the record to support his position. In his brief, Mr. Hamby cites to the testimony of a University of Tennessee at Memphis employee, who testified that

while there were no signs warning people not to step on the grates, a person would have to step up onto the grates to walk on them, as the grates were raised some ten inches off the ground. That same employee also testified that a person with a certain amount of experience would not be walking back and forth on the grate to inspect as they could have stood back from the grate to examine or they could have picked up the grate, as they are removable, and climb down into the pit to inspect. Although not cited to in his brief, Mr. Hamby did testify in the January 16, 2002 hearing that he had walked on this specific grate before without incident.

The other testimony upon which Mr. Hamby relies is from the hearing that occurred on October 28, 2003, after remand by this Court. The transcript of that hearing is not contained in the record.[9] "The appellant has the primary burden to see that a proper record is prepared on appeal and filed in this Court." *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989) (citing Tenn. R. App. P. 24). Further, "[i]n the absence of a transcript, this Court presumes that sufficient evidence existed to support the trial court's decision." *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988) (citing *Daniel v. Metro. Gov't of Nashville*, 696 S.W.2d 8, 10-11 (Tenn. Ct. App. 1985); *Lallemand v. Smith*, 667 S.W.2d 85, 88 (Tenn. Ct. App. 1983)). After reviewing the record provided to this Court, we do not find that Mr. Hamby has overcome this presumption by the evidence cited. Accordingly, we affirm the commission's ruling.

## Conclusion

In light of the foregoing, we affirm the decision of the ruling finding Mr. Hamby to be at least 50% at fault for his accident, thereby barring his recovery. Costs of this appeal are taxed to the Appellant, Norman Hamby, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[9]The only pages of that transcript available to this Court are nine pages, being pages 1, 2, 4, 5, 13, 23, 28, 33, and 34, attached to Appellee's brief. The testimony contained in those pages supports the commission's allocation of fault.