IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 21, 2019 Session

## LEAH KEIRSEY v. K-VA-T FOOD STORES INC.

Appeal from the Circuit Court for Hamblen County
No. 13-CV-136          Alex E. Pearson, Judge

_____

### No. E2018-01213-COA-R3-CV

_____

This matter involves the grant of summary judgment to defendant, K-VA-T Food Stores Inc. (Food City), in a slip and fall case. Plaintiff, Leah Keirsey, filed an action alleging that, on a rainy day, defendant negligently maintained its premises and failed to warn her of hazardous conditions. Defendant moved for summary judgment arguing that it exercised reasonable care to prevent injury to its customers and warned them of potentially wet conditions; its motion was granted. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Troy L. Bowlin, II, Knoxville, Tennessee, for the appellant, Leah Keirsey.

J. Eric Harrison and Jeffrey M. Cranford, Morristown, Tennessee, for the appellee, K-VA-T Food Stores Inc., d/b/a Food City.

## OPINION

### I.

It was raining on July 12, 2012 when plaintiff drove to defendant Food City for groceries. She brought an umbrella with her and wore flip-flop/sandal shoes. When she arrived at the store, plaintiff noticed there was water on the floor in the entryway. She recalled that, "[i]t was minimal. Maybe a shoe print, couple of drops. Nothing you would get somebody and say, 'Hey, this needs to be cleaned up.' " She recalled there was not a mat on the ground near the entrance; she instead had to wipe her feet on concrete outside before entering. Plaintiff shopped for over an hour.

When plaintiff finished shopping, she asked a store employee to help her with her grocery bags. She stated that she "was going to pull [her] car up to the curb and load [her] groceries since it was still raining." A courtesy clerk subsequently assisted plaintiff by pushing her cart toward the exit. As plaintiff proceeded toward the exit, she slipped and fell.

Plaintiff testified that she did not see "any puddles of water [in the lobby] until [she] actually slipped on it and fell to the floor." She inferred that:

> a large puddle of water mixed with dirt caused me to slip on the floor and fall because I ended up in a large puddle of dirty water that had not been there when I came into the store about an hour and a half earlier.

Three of defendant's employees who were working that day testified regarding the condition of the entryway. They also testified regarding defendant's rainy day policy and their alleged adherence to the policy on the day at issue.

Monica Sena was defendant's head cashier. She recalled the events. She testified that it was part of her job to keep the lobby floor as clean as possible under the circumstances. She testified that there had been three or four days of continuous rain that week; she recalled having to take a detour home due to the atypical flooding. She testified that the courtesy clerks wiped the shopping carts with paper towels that day to prevent them from dripping water onto the floor. She recalled putting "wet floor signs at the entranceways, and one in the middle." She testified that they kept dry mops nearby to absorb excess water. She recalled that they had placed rugs in the entranceways for additional traction and rotated them often.

Josh Hannah was the courtesy clerk who assisted plaintiff with her groceries. He also testified regarding his recollection of the events. He recalled there were "wet floor" signs, one at each entrance, and an additional one in the middle of the foyer. He personally placed the one in the middle; he recalled "there [were] a total of three in the lobby, one by each door, and one in the middle." He testified that there was a mop near the entrance "that [the courtesy clerks] had been using to spot mop the lobby to keep it dry as much as they could." He was behind plaintiff when she slipped, and he did not recall seeing a "puddle" or "pool" of water on the floor where plaintiff fell.

In addition, the on-duty assistant store manager testified. He recalled walking to the front of the store to make sure the signs were placed. He testified that there was one at each entrance and one in the middle. He was called to the front of the store after plaintiff fell. He stated that he noticed some water on the floor, and described it as, "like being tracked in…on someone's shoes…it wasn't puddled up."

After her fall, Plaintiff's ex-husband took her to an emergency room. She had a "gaping wound on [her] knee that was bleeding pretty profusely." She had an x-ray of her knee and an MRI of her neck. She received stitches in her knee; she was given a brace for her neck. The stitches were removed a week later; she used the neck brace for one day. She did not break or otherwise damage any bones. Plaintiff states that for, "several months after this accident, I had orthopedic manual therapy…for my knee, hip and lower back which did help some but did not resolve all the pain I was having." Plaintiff received injections in the "inflamed and painful areas." Her daily activities were hindered.

Plaintiff filed a complaint alleging that defendant was negligent by failing to maintain the premises and by failing to warn customers of the dangerous conditions caused by the wet floor. Defendant denied liability alleging that its employees were not negligent in the maintenance of the premises, that defendant properly warned its customers of potentially dangerous conditions due to the weather, and that plaintiff failed to take reasonable care to avoid injury and is at least fifty percent at fault for the injuries she sustained.

In the course of discovery, defendant produced a surveillance videotape of the incident. The trial judge watched the recording; he discussed his observations:

> there was a "wet floor" sign, "caution/wet floor" sign in the video. It was placed originally on...sort of towards the center...it's hard to tell from the angle of the video but towards the center of the entryway of Food City. And what I say by the "entryway" there are two doors that you can come in Food City and the "wet floor" sign we can see is fairly close it appears to the center of both of those doors as you would come in through the foyer and then come into Food City proper, the actual store. The outside area, I think there's probably or it looks like there were some kids that were playing... But this "wet floor" sign is as you come into Food City. And that's present. It does get moved at different times during the video and Mr. Bowlin is correct that at the conclusion of all the cleanup and after Ms. Keirsey is gone the "wet floor" sign is then closer to the left side of the video screen than it initially was…
>
> Ms. Keirsey was aware it had been raining. She observed it. Obviously she had an umbrella. She observed water in the floor as she first came in.

*     *     *

There was testimony from Food City about all...essentially all their witnesses through deposition that there was this rainy - day policy about all the things that they were supposed to be doing, what their policy was, about mops and where they should put buggies and then if they were bringing them in that they should dry them off if they didn't leave them outside to dry off. Which you can't really see that on the videotape. I mean, you don't...you don't know what happened because we just don't have that portion of the videotape.

But where the...and Food City was obviously aware it's raining as well.

Here you have Ms. Keirsey after she spends as she says an hour to an hour and a half in the store. We don't know exactly how long. She's exiting. She's got her groceries. She's leaving. She has an umbrella in her hand and she asks one of the courtesy clerks if he will assist her with taking her groceries out to the car because it's still raining. And so I presume she's going to go get the car and bring that up and then that way they can put the groceries in and not get all her groceries wet...

So there's no question that Ms. Keirsey knew that it was still raining. That was the reason she wanted the courtesy clerk to accompany her outside the store.

And there's no question that when it's raining out and you have people coming in a Food City you're going to have water tracks in the floor. Now Ms. Keirsey makes a statement as I took it from her deposition…that she didn't see any mats. Well there is a mat that you can see on the videotape. Now I'm talking about a mat inside the store. I...there was testimony from Food City there should have been mats outside the store but Ms. Keirsey says she scrapped or cleaned her feet if you will on the concrete and not on the mat. But regardless of that there was a mat that you can see in the video and you can see the mat removed from the

videotape as they're cleaning the area and then you can see the mat put back in that area.

So as the Court thinks through this case Ms. Keirsey, she knew the floor was wet. There were numerous patrons coming in and out of that location. There was a "wet floor" sign and it might very well be...it was clearly there. It might very well be that she didn't pay any attention to it. I'm certainly not accusing her of any dishonesty. In her deposition she seemed like she wanted to, you know, be very truthful in it. But there were people from Food City that were attending to her. There's a first aid kit. It seems Ms. Keirsey testified about how long it was, not that this is relevant to the initial fall but it's just important as you're considering the facts. She testified she laid there for a period of time, nobody helped her, things of that nature. But those...that was her perception... She didn't disagree with the videotape she just would say that her impression was that it was longer, her impression was this or impression was that…

\*      \*      \*

…the Court finds that the attempt to create disputed facts is not controlling in this particular case. The Plaintiff was on notice that the floor was wet. When you have people coming in a store such as Food City and it's raining there's going to be water on the floor. Ms. Keirsey knew that. There's just no evidence, no disputed material facts that Food City was negligent in the way they maintained that premises. They put up a "wet floor" sign. They say three. We can clearly see one right prominent in the entryway. There is clearly a rug there that Ms. Keirsey says, as I take her testimony there wasn't one there or she didn't recall one being there but it is there. I can see it in the videotape.

The court held that there were not any disputed facts, and if there are, then they are not material facts. It granted defendant's motion for summary judgement. Plaintiff appeals.

## II.

We consolidate and restate plaintiff's issue on appeal as asking this Court to consider whether the trial court erred in granting defendant's motion for summary judgment.

## III.

For the purposes of review on appeal of motions for summary judgment, we view the facts in favor of the non-moving party plaintiff. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. *Id*. The moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Id*.

When a motion for summary judgment is properly supported, the nonmoving party, in order to survive summary judgment, may not rest upon the mere allegations or denials of its pleading but must respond, and by affidavits or one of the other means provided in Rule 56, set forth specific facts showing that there is a genuine issue for trial. *Id*. at 265. "The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id*. "[S]ummary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial." *Id*. (citing Tenn. R. Civ. P. 56.04, 56.06).

## IV.

### A.

Premises owners have a duty to use reasonable care to protect their customers from unreasonable risks of harm. *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999) (citations omitted). This duty includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired.

Nonetheless, owners of business premises are not insurers of their customers' safety. *Psillas v. Home Depot, U.S.A., Inc.,* 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001) (citing *McClung v. Delta Square Ltd. P'ship,* 937 S.W.2d 891, 902 (Tenn. 1996)). A plaintiff seeking recovery under a premises liability theory must establish the elements of negligence. The elements of a negligence claim include: (1) a duty of care owed by the defendant to plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *Satterfield v. Breeding Insulation Co.,* 266 S.W.3d 347, 355 (Tenn. 2008).

Premises liability stems from superior knowledge of the condition of the premises. Accordingly, the plaintiff must prove that the defendant had either actual or constructive notice of the injury-causing condition. This proof may take one of two forms. First, the plaintiff may show that the defendant itself caused or created the condition and, therefore, had notice of it. *Sanders v. State,* 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989); *Benson v. H.G. Hill Stores, Inc.,* 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985). Second, the plaintiff may show that the dangerous condition existed for so long that the defendant should have known about it. *Chambliss v. Shoney's, Inc.,* 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987); *Jones v. Zayre, Inc.,* 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980).

In its motion for summary judgment, defendant argues that plaintiff cannot produce evidence from which the trier of fact could infer that the dangerous condition existed long enough that it would have been discovered by one exercising reasonable care. While defendant's employees testified that they knew it was generally raining outside, there remains no material evidence that any employee had actual knowledge of the dangerous condition plaintiff encountered, i.e. "puddle" in the foyer.

Plaintiff argues that defendant had constructive knowledge of the existence of the dangerous condition and failed to take reasonable care to ensure the safety of its customers by either eliminating the hazard or providing an adequate warning. Plaintiff stipulated that she was aware it was raining at all relevant times on the day at issue. She also testified that she saw water on the floor when she entered. Plaintiff argues that defendants' superior knowledge is based on a general knowledge of the "amount of water that ultimately gets deposited in th[e] foyer area when it's raining outside."

"In cases [] where liability is based upon constructive knowledge of the dangerous or defective condition, there must be material evidence from which the trier of fact could conclude the condition existed for sufficient time and under such circumstances that one exercising reasonable care and diligence would have discovered the danger." *Paradiso v. Kroger Co.,* 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973) (holding that mere proof of the defect was not in itself sufficient to warrant or establish constructive notice on part of defendant proprietor).

In ***David G. Rogers, ex rel. Karen Wright v. AutoZone Stores, Inc.***, the plaintiff, Ms. Wright, slipped and fell in an AutoZone store. It was raining. Ms. Wright entered the store, purchased the items she need, borrowed a funnel, and left. She returned about twenty minutes later to return the funnel to the clerk. When she proceeded toward the exit, she slipped and fell in a "puddle of water" and injured her knee. Ms. Wright recalled that the puddle was the size of a plant pot, but she did not see it prior to her fall. The employees did not see the spot prior to the fall. There was a warning sign near the front of the store, but not where she fell.

Ms. Wright filed suit against AutoZone alleging that it was negligent by failing to maintain the premises and failing to warn customers of the dangerous condition caused by the wet floor near the exit. Her claim was based upon constructive notice and the premise that the condition existed for a long enough period of time that the employees should have become aware of the condition. AutoZone moved for summary judgment; it was granted. On appeal, this Court affirmed, holding that there was insufficient evidence regarding the source of the puddle or the actual length of time that the puddle was present from which the trier of fact could infer that the dangerous condition existed for such a length of time that one exercising reasonable care would have discovered it. ***Rogers ex rel. Wright v. AutoZone Stores, Inc.***, No. M2011-02606-COA-R3CV, 2012 WL 3594342, at *7 (Tenn. Ct. App. Aug. 21, 2012).

Here, plaintiff has not presented material evidence regarding defendant's actual or constructive notice of the dangerous condition, i.e. "puddle" of water in the foyer, because plaintiff has failed to provide material evidence regarding the length of time that the "puddle" was present. Plaintiff's attempt to surmise that the dangerous condition occurred sometime in the hour and a half between her entrance and her exit is insufficiently specific for a reasonable trier of fact to infer that the dangerous condition existed long enough that one exercising reasonable care would have discovered it.

Plaintiff also argues that there remains an issue for the trier of fact precluding summary judgment, because defendant was "negligent in failing to adequately warn the public at large and the [p]laintiff [] of the floor's slippery and dangerous condition." Plaintiff recalled that, as she "left the cash register area[,]…[t]here was still no mat and no warning cone…." In its motion for summary judgment, defendant counters that plaintiff's claim must fail, because the video evidence clearly shows a yellow "wet floor" warning sign prominently placed in plaintiff's path of travel, and it also clearly shows a mat placed at the entrance for additional traction. Accordingly, defendant argues that the video evidence, combined with the testimony of defendant's employees, renders plaintiff unable to establish that defendant failed to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises.

As discussed by the trial court, the surveillance video of the store's entryway shows a mat on the floor near the entrance; the video also shows a yellow "wet floor"

warning sign positioned in the center of the store's entryway. When an individual enters or exits the store they inevitably encounter the warning sign. Moreover, the video shows plaintiff exit in the direction of the yellow "wet floor" warning sign. She walks toward the warning sign. She passes directly by the warning sign on her way toward the left exit door. Contrary to plaintiff's recollection, the video evidence shows that there was both a mat and a warning sign in the entryway.

Plaintiff argues that, despite the warning sign visible in the video, a factual issue remains regarding whether, in accordance with its rainy day policy, defendant placed an additional warning sign at each of the two exits. Unfortunately, the video provided does not show the angle where the additional signs should be located. However, we agree with the trial court's holding that plaintiff's attempt to create a genuine issue of material fact as to whether or not two additional signs were present is not material nor controlling in this matter, because the video evidence shows an indisputably present yellow "wet floor" warning sign prominently placed in plaintiff's view and path of travel. She passes directly by the warning sign mere moments prior to her fall. The video evidence conclusively establishes that defendant provided a warning to plaintiff of ongoing wet conditions in the entryway. No reasonable factfinder could conclude defendant failed to warn plaintiff of hazardous conditions.

**B.**

Plaintiff next argues that an issue of material fact exists as to whether or not defendant adhered to its own rainy day policy "as to the wet floor signs and the mops despite its knowledge of the continuing hazard." Plaintiff argues that, because the approximately half hour of video footage available prior to her fall does not show any employees dry/spot mopping the entryway, defendant negligently failed to adhere to its policy.

Defendant's "Customer & Associate Safety" PowerPoint slides indicate that defendant's rainy day policy calls for employees to "[d]ry mop the floor as needed." The "Rainy Day Policy" slide prepared by the store's manager states that:

> When it is raining – [] Pull dry carts from the sidewalk to the inside of the store. Dry carts off for customers. [] Extra rugs should be pulled and placed down in the lobby from inside the store to help with the inclement weather. [] Wet Floor signs should be placed in the lobby.

Defendant's safety manual, in relevant excerpts, states that:

> All associates are advised to constantly be on the lookout for conditions that could cause a slip, trip or fall. Hazards found

-9-

must be corrected immediately, or the Manager must be advised of the condition if you cannot correct it.

\* \* \*

Special attention should be given to the entrance and shopping cart areas on inclement weather days to bring wet floors under control and to caution the customer that the area may be wet or damp.

Defendant's employees testified that they are to monitor the foyer and spot mop any wet spots and/or spills they observe or of which they are otherwise made aware.

In the course of performing their assorted work duties, the video shows defendant's employees traverse the foyer at various times in the half hour of video footage available prior to plaintiff's fall. An employee traverses the left side of the foyer where plaintiff fell approximately eight minutes and fifty-four seconds prior to her slip and fall. A different defendant employee traverses the right side of the foyer approximately five minutes and forty-nine seconds prior to plaintiff's fall. The video does not show these employees use a mop; however, as discussed in the previous section of this opinion, plaintiff has not presented any material evidence showing at what point defendant employees should have, because no material evidence exists to show when the dangerous condition formed. Plaintiff herself testified several times that up until the moment she slipped and fell she was unable to "see the puddle."

Even if we look at the evidence in the light most favorable to plaintiff, the evidence available at this point in the case does not indicate that a genuine dispute of material fact remains as to whether defendant acted reasonably under the circumstances, such that a reasonable trier of fact could conclude defendant was negligent in maintaining its premises.

## C.

Lastly, defendant asserts that plaintiff should be barred from recovery under the doctrine of comparative fault. The Supreme Court has instructed that "so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover." *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). If "the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that her fault was equal to or great[er] than that of the defendants, summary judgment in the defendant's favor may be granted." *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 91-92 (Tenn. 2000).

In ***Elrod v. Continental Apartments***, plaintiff Elrod drove to an apartment complex to submit a security deposit the day after a winter storm. As she drove to the complex, it was still snowing. The owner of the complex had shoveled and salted the sidewalks and handicap ramps, but did not salt or shovel the parking lot where she parked. When Elrod exited her car, she saw snow and ice on the ground, so she walked carefully as she approached the complex. However, on her way back to the car, she walked in a less careful manner. She subsequently slipped and fell resulting in her injury. The trial court granted the defendant's summary judgment motion and it was affirmed on appeal. This Court held that Elrod failed to exercise reasonable care in the face of a known hazard. She saw snow when she approached; she returned by the same path but apparently failed to proceed with adequate caution. The Court held that reasonable minds could not differ that her fault was greater than any of the defendants and therefore, the defendants were entitled to summary judgment. ***Elrod v. Cont'l Apartments***, No. M2007-01117-COA-R3-CV, 2008 WL 425947, at *1 (Tenn. Ct. App. Feb. 13, 2008).

Similarly here, plaintiff knew it was raining when she entered the store. She saw water on the floor, and exhibited careful behavior by noticing the water and wiping her flip-flops/sandals. As noted elsewhere in this opinion, she knew it was still raining when she was ready to leave. Plaintiff maintains that she did not see a warning sign and it remains a jury question whether the notice defendant provided was adequate; for purposes of summary judgment, we can assume that she did not see the warning sign. However, the video conclusively establishes that plaintiff did not see the warning, not because of improper or inadequate placement, but because of her own inattention while exiting. The video shows that, as plaintiff heads toward the exit, she looks down and fiddles with her umbrella. She then turns her head to look backwards, continues walking, and appears to speak to the clerk while pointing in another direction. She then continues to walk while looking in the opposite direction of her travel as she passes directly by the yellow warning sign. She then turns to face her direction of travel and four steps later she slips and falls.

The video evinces that, as plaintiff approached the exit, the wet floor sign was in her field of vision. *But see*, ***Masters v. Wal-Mart Stores E., L.P.***, No. M2008-02752-COA-R3-CV, 2009 WL 2868750 (Tenn. Ct. App. Sept. 1, 2009) (reversing summary judgment because the warning sign was not in plaintiff's 'field of vision' and there remained a factual issue regarding whether the sign was an adequate warning). In this matter, there is no question that the wet floor sign was clearly positioned in the center of the entryway to warn patrons of wet conditions. Plaintiff's argument that the sign was on the "right side lobby" instead of in her field of vision is, again, contradicted by the video evidence. The available evidence demonstrates that, despite her observant and careful behavior when entering, plaintiff failed to exercise reasonable care to observe the warning sign and proceed with caution, in the face of known wet conditions, upon her exit. Her videotaped inattention, resulting in an apparent failure to observe and heed the

provided warning, under comparative fault principles, renders her fault equal to or greater than that of the defendants. Reasonable minds could not differ and no reasonable trier of fact could conclude otherwise. Accordingly, defendant is entitled to judgment as a matter of law.

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Leah Keirsey. Case remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE