# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 6, 2013 Session

## CYNTHIA L. CHRISTIAN, ET AL. v. AYERS L.P. d/b/a MS. LASSIE'S LODGE

### Appeal from the Circuit Court for Campbell County
### No. 15100     John McAfee, Judge

---

### No. E2013-00401-COA-R3-CV-FILED-MARCH 28, 2014

---

This is a premises liability case. An attendee at an event fell in the defendant's parking lot and sustained injuries. The attendee and her husband filed suit against the defendant claiming negligence because the parking area had no lighting on the evening of the fall. The defendant filed a motion for summary judgment, asserting it: had no notice the outdoor lights were burned out; owed no duty to the attendee; and the attendee was more than fifty percent at fault for her injuries. The trial court determined the record contained insufficient evidence to establish that the defendant had notice the outside lights were not working. The other issues raised were dismissed as moot. The plaintiffs appeal. We reverse and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

R. Kim Burnette and Stacie D. Miller, Knoxville, Tennessee, for the appellants, Cynthia L. and Benny Christian.

P. Alexander Vogel, Knoxville, Tennessee, for the appellee, Ayers L.P. d/b/a Ms. Lassie's Lodge.

## OPINION

## I. BACKGROUND

On the evening of November 30, 2010, Cynthia Christian ("Invitee") was attending

a meeting at Ms. Lassie's Lodge ("the Lodge") related to a "Relay for Life" event sponsored by the American Cancer Society. The Lodge is owned and operated by Ayers, L.P. ("Owner"). On the date of Invitee's accident, the Lodge had been owned by Owner for approximately 6.5 years. It is rented out for parties and overnight lodging through the nearby Hampton Inn, which is also owned and operated by Owner.

Invitee arrived at the Lodge at approximately 5:30 p.m. She parked in a paved lot adjacent to the facility. A short walkway leads from the parking area to the Lodge's porch steps. It was rainy, but the natural lighting was sufficient to allow Invitee to enter the Lodge without incident. The event ended sometime between 6:30 and 7:00 p.m. When Invitee left the Lodge, it was dark outside. There was a "slight drizzle." The lights located beside the entrance doors were the only exterior lights on, providing very little illumination along the side of the Lodge. Beyond the front porch, there was no exterior lighting for the walkway or parking area.[1] The outdoor lighting at that time consisted of a two bulb fixture on the eave of the corner of the Lodge above the steps and walkway. The lighting was not working at the time of the accident. Prior to the fall, Invitee was unaware of the existence of the light fixture.

According to Invitee, it was wet enough that she planned to pull her car up to the front porch so her passengers could get in quickly to avoid getting items they were carrying wet. She recalled walking slowly with extra caution because it was so dark and she was unable to see the ground. Invitee had difficulty locating her car and had to click her key fob to identify it. While this action activated the vehicle's headlights, they were pointed away from where she was standing.

As Invitee began walking toward her car, she used a normal gait and was in mid stride when she fell. She took a step forward with her left foot and it went down further than her right foot, disrupting her walking. As a result, she pitched forward. Invitee claimed that she did not slip – she maintained that her foot went into a hole or drop-off and she fell forward. The record contains a photo depicting the area of the fall, located near the edge of the walkway. As the result of her fall, Invitee sustained injuries, primarily a four-part fracture of the right proximal humerus. After hospitalization and surgery, she incurred medical expenses of approximately $52,000.

On November 29, 2011, Invitee and her husband, Benny Christian (collectively, "the Christians"), sued Owner for injuries Invitee sustained when she fell. The Christians averred that Owner "had a duty to maintain its premises in a reasonably safe condition for its invitees, including a duty of providing adequate parking area lighting." The complaint asserted that

---

[1]"New, big street lighting" has since been installed.

Owner breached its duty to Invitee when "it failed to maintain its premises appropriately, and thereby either creating or allowing an unreasonably dangerous condition to exist" by failing "to provide any lighting for the steps and sidewalk." Owner admitted that there was no lighting to illuminate the walkway or parking lot because the bulbs "apparently" had burned out. Owner later filed a motion for summary judgment seeking dismissal of the action setting forth three arguments: (1) that it had no notice that the lights in question were out; (2) that it owed no duty to Invitee; and (3) Invitee was more than 50 percent at fault for her injuries.

The Owner's representative, Traci Dower,[2] was in charge of the event at the Lodge on the night Invitee fell. Ms. Dower, a partner in Owner, opened and closed the facility that evening. She recalled flipping on "some switches" but as far as actually knowing what lights came on, she asserted a lack of awareness. Ms. Dower testified that prior to Invitee's fall, she became aware the lights at issue were not on. She related that she looked for the switch for the outside lights but could not find it. Ms. Dower then contacted the Hampton Inn to inquire about how to turn the lights on. She was told there was not a switch for the lights in question and that they should come on automatically. When asked specifically what led her to make the call to the Hampton Inn, Ms. Dower responded: "I don't remember. I had been there a while. I don't know if when the door opened I realized it was dark outside, but I went to turn and try to find those lights and couldn't find the switch." Her call to the Hampton Inn took place prior to Invitee's fall.

The day after the accident, workers arrived at the Lodge to test the outdoor lighting – lights activated by photocell that are supposed to come on at night and go off at dawn. It was discovered that multiple exterior bulbs, including the lights in question, were burned out, requiring the purchase of seven two-pack containers of flood lights to replace all the inoperative bulbs.

The record reveals that Owner did not have any written plan or policy regarding the inspection or maintenance of the outdoor lighting fixtures at the Lodge. No logs or other documentation was maintained regarding inspections of the Lodge. Its housekeeping staff did not and was not expected to inspect the operation of the exterior light fixtures. Three employees of other entities operated by Owner claimed to drive by and check the Lodge on occasion. Sherry Muse, the general manager at the nearby Hampton Inn, claimed to sometimes drive around the Lodge and inspect it as "just kind of a general thing." However, she admitted that she does not check the Lodge's outside light fixtures and that the only way she would know that the lights in question were out is if somebody happened to tell her or she was out at night and just happened to notice. She also acknowledged it could be difficult

_____

[2]Ms. Dower "volunteered" the Lodge for the cancer event. She testified in her deposition that prior to the night in question, she had been to the Lodge about twenty times.

to see at night at the Lodge if the lights in question were not on. Donald Brown, a maintenance man for Ayers Realty, claimed to drive around the facility occasionally while on outings with his family, but he admitted that he performs no regular inspection of the Lodge or its outdoor lighting. Jimmy Daugherty, the maintenance supervisor for another Ayers entity, claimed to drive by the Lodge on occasion, but he admitted he makes no regular trips for the purpose of inspecting the Lodge or its outdoor lighting. Mr. Daugherty testified that there were five corners of the Lodge with light fixtures on photocells.

The trial court concluded that there was insufficient evidence regarding Owner's notice of the alleged dangerous condition. The court held that its finding rendered moot the other claimed bases for Owner's motion. The order specifically stated as follows:

> The defendant's Motion for Summary Judgment is GRANTED finding that the defendant has, pursuant to Tenn. Code Ann. § 20-16-101(2), demonstrated to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Specifically, the Court finds that the record is void of sufficient evidence regarding the defendant's notice of the alleged dangerous condition. The Court finds that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. The defendant is hereby dismissed with prejudice.

> Finding this way, the Court renders the other bases for the defendant's motion for summary judgment, specifically that (1) Mrs. Christian was more than 50% at fault for her injuries and that (2) the plaintiffs cannot show the essential element of duty, moot.

The Christians filed a timely notice of appeal.


## II. ISSUE

We consolidate and restate the issues raised on appeal as follows:

Whether the trial court erred in granting the motion for summary judgment in favor of Owner.


## III. STANDARD OF REVIEW

This lawsuit was filed on November 29, 2011. The dispositive motion is therefore

governed by Tennessee Code Annotated section 20-6-101: "In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1)  Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2)  Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101(2).

A trial court's decision to grant a motion for summary judgment presents a question of law.  We therefore review the trial court's grant of summary judgment de novo with no presumption of correctness.  *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997).  We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor.  *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008);  *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999).  If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law.  *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV.  DISCUSSION

In the instant case, the trial court awarded summary judgment to Owner upon determining that there was insufficient evidence regarding Owner's notice of the alleged dangerous condition.  The Christians contend that Owner had both actual and constructive knowledge that the lights in question were not working prior to Invitee's fall.

A plaintiff seeking recovery under a premises liability theory cannot succeed in the absence of any of the following:

(1) a duty of care owed by the defendant to plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3)  an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

*Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).  In addition to the

elements of negligence, a plaintiff must also establish the existence of a dangerous or defective condition that:

> (1) was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident.

*Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citations omitted).

"Actual notice" is defined as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994). The report of a dangerous condition places a burden on a defendant to investigate and determine the extent of the problem. *Johnson v. Knox Cnty. Bd. of Educ.*, No. E2003-00248-COA-R3-CV, 2003 WL 21516217, at *2 (Tenn. Ct. App. June 30, 2003). "Constructive notice" is defined as "'information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997)(quoting *Kirby*, 892 S.W.2d at 409). Specifically addressing constructive notice, a plaintiff can establish it in one of three ways. First, the plaintiff may demonstrate that the owner or operator of the premises caused or created the condition. *See Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989). Second, if a third party caused or created the dangerous condition, the plaintiff may prove constructive notice by evidence that the condition "existed for a length of time" that the owner/occupier "in the exercise of reasonable care, should have become aware of that condition." *Elkins v. Hawkins Cnty.*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at *4 (Tenn. Ct. App. May 19, 2005). Third, the plaintiff may show constructive notice by proving that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous condition. *Blair*, 130 S.W.3d at 765-66. All three methods of proving constructive notice are related to the defendant's superior knowledge of the premises. *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980).

In cases involving premises liability, "the premises owner has a duty to exercise reasonable care under all circumstances to prevent injury to persons lawfully on the premises." *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999) (citing *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994)). For a plaintiff to prevail in such a case, he or she must prove that "the injury was a reasonably foreseeable probability and that some action within the defendant's power more probably than not would have prevented the injury." *Dobson*, 23 S.W.3d at 331. The risk of harm is foreseeable when "a reasonable

person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable. *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008) (citations omitted). The foreseeability of harm is to be determined as of the time the acts or omissions alleged to be negligent occurred. *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992).

In prior cases, we have addressed the duty of care placed on a premises owner as follows:

> This duty is based upon the assumption that the owner has superior knowledge of any perilous conditions that may exist on the property. *See Kendall Oil Co. v. Payne*, 293 S.W.2d 40, 42 (Tenn. Ct. App. 1955). The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition, and to remove or warn against latent or hidden dangerous conditions of which the owner is aware or should be aware through the exercise of reasonable diligence. *Eaton*, 891 S.W.2d at 593-94. However, our Supreme Court has held that a duty may exist even where the injury-causing condition is alleged to be open and obvious to the plaintiff . . . the duty must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. *Coln v. City of Savannah,* 966 S.W.2d 34, 43 (Tenn. 1998) . . . Only after a duty is established does comparative fault come into play. *Id.* at 42.

*Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012).

The duty of ordinary care on the part of business owners includes the provision of adequate lighting. *See Heggs v. Wilson Inn Nashville-Elm Hill, Inc.*, No. M2003-00919-COA-R3-CV, 2005 WL 2051287, at *6 (Tenn. Ct. App. Aug. 25, 2005); *Thompson v. Ruby Tuesday, Inc.*, No. M2004-01869-COA-R3-CV, 2006 WL 468724, at *10 (Tenn. Ct. App. Feb. 27, 2006); *see also* C.J.S. *Negligence* § 580 (2005) (stating that "where the owner of property has undertaken to light an area of his or her property he is required to exercise reasonable care to provide adequate lighting.").

In this case, Owner's representative in charge of the Lodge on the evening in question had actual knowledge, prior to Invitee's fall, of the lights in question being inoperative. By showing actual knowledge, a plaintiff demonstrates that the owner had a duty to act reasonably under the circumstances and remedy the condition that caused injury to the plaintiff. *Blair*, 130 S.W.3d at 766. Under the facts of this case, it is a question for a jury as to whether Owner, having knowledge, took sufficient action or steps in response, or whether Owner's failure to take further action was reasonable under the circumstances.

Another genuine issue of material fact present in this matter is whether Owner could or should have become aware of the dangerous condition through the exercise of reasonable care, such as inspecting and testing the operation of all the lights at the Lodge as well as recognizing the lack of lighting in the parking lot. The Owner was in the best position to prevent falls in the parking area based on its superior knowledge of conditions on the property. There is material evidence in this case from which the trier of fact could conclude that a dangerous condition existed for sufficient time and under circumstances that one exercising reasonable care and diligence would have discovered the danger. All these issues should be determined by a jury.

## V. CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for further proceedings. Costs of the appeal are assessed to the appellee, Ayers, L.P. d/b/a Ms. Lassie's Lodge.

_____
JOHN W. McCLARTY, JUDGE